FRED MEYERS, JR., APPELLEE, v. FORREST NEELD, APPELLANT.

289 N. W. 797

FILED JANUARY 19, 1940. No. 30740.

*Henry F. Schepman* and *John C. Mullen,* for appellant.

*Jean B. Cain, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

MESSMORE, J.

This is an action for damages wherein the plaintiff charged the defendant with negligence, proximately causing injuries to him as the result of a collision with defendant's automobile while plaintiff was riding a horse. The cause was submitted to a jury, resulting in a verdict for plaintiff, assessing his damages in the sum of $1,250, and finding against the defendant on his cross-petition. Motion for a new trial was overruled, and defendant appeals.

The record discloses that about 4:30 o'clock in the evening of January 27, 1938, the plaintiff, a farmer, was riding a saddle-horse, 10 or 12 years old, weight about 1,100 pounds, carrying a saddle weighing 60 to 70 pounds, north on the east or right-hand side of paved highway No. 73, on the dirt shoulder thereof. He had traveled the highway on many occasions, taking cattle to and from the pasture each morning and evening. Just prior to the accident, he proceeded around a concrete spillway, which the horse would not jump, and, as he did so, he looked back, saw the defendant's automobile approaching from a distance of 200 feet at a speed of 35 or 40 miles an hour. Defendant and his wife were proceeding north on the highway to Verdon, where they lived.

The plaintiff's testimony with reference to the accident is in substance as follows: The horse shied a little bit at a card-board box lying in a ditch; the horse's foot slipped off the edge of the curb of the pavement; defendant's car hit

the horse, caught its left hind leg and threw the plaintiff and the horse backward; the plaintiff fell to the pavement on his elbow, resulting in permanent injury to his arm. Knowing his arm was broken, he got up, telling the defendant to catch the horse and tie it to a fence on the east side of the road, which he did. Defendant then took the plaintiff to his home.

Defendant, in relating his version of the accident, testified: They were following at a distance of about 12 feet behind a truck which was proceeding north. The horse apparently became frightened at a big box, shied into the truck, "jerked the handle off the truck," causing the horse and rider "to come back." The truck stopped the horse and rider temporarily; they then came back and struck the right-hand side of defendant's car, damaging a lamp; the car moved across the pavement eight or ten feet before it stopped. Defendant's wife corroborated his testimony, stating that she saw plaintiff riding his horse along the edge of the road ahead of their car, which was traveling slowly; that all of a sudden the horse "started to shy with its back, rear end to the west and it just kept on going sideways and backed, and there was a truck just ahead of us and it was coming into the truck and it just kept coming and it sort of sideswiped our car when he hit the lamp on the side, he sort of slipped down on his hind feet and he got his footing again and then he just backed to the car; * * * my husband just stopped it, he was off the pavement on the west side of the pavement; my husband jumped right out and helped him;" that the plaintiff was pulling back on the reins; the car stopped with the left front wheel on the west side of the pavement, and plaintiff and his horse were back of the car.

The only disinterested eyewitness, one Stouffer, testified that he was riding in the rear end of a telephone truck, proceeding south on the highway; that he was facing north; that they passed the plaintiff, who was on the "east side of the road on the shoulder, edge of the road;" that as plaintiff got by 50 to 100 yards, a car passed; that about that time the horse became frightened at something and started back-

ing onto the pavement. In response to the question: "Did the horse and car collide?" the witness replied: "Well, yes; not right at that time though; more to the west side of the pavement and the horse continued backing across and the way I could see it and the way it looked to me as though the horse backed into the car;" the truck did not hit the horse. Other evidence is to the effect that admissions were made by the defendant to the plaintiff, his father and his wife, that he hit the horse and rider, and his subsequent denial of such statement, by saying that the truck struck the horse.

Defendant's version of the accident, as to the truck traveling north, is not sustained by the evidence. Likewise, the evidence as to whether the horse had been dragged along the east side of the pavement for 30 feet or more is not clear. The eyewitness did not see the car carrying or dragging the horse, and, under the circumstances, this evidence is highly questionable. The evidence is conclusive that the horse could not run after the accident, but could hobble on three legs; its left hind leg was broken in two places, and out of joint at the hip. Plaintiff's testimony also shows the width of the pavement to be 18 or 19 feet, leaving the entire distance thereof to permit the defendant to drive around the horse. No contention is made as to either party being placed in a position of peril, nor was the doctrine of the last clear chance pleaded or contended for.

Negligence consists in the doing of some act, under circumstances surrounding the accident involved, which a man of ordinary prudence would not have done, or the failure to do some act or take some precaution which a man of ordinary prudence would have done or taken. The evidence shows that both the plaintiff and the defendant were acquainted with and knew the propensities of horses. It would seem clear that the rider of the horse in the instant case could not anticipate or expect that a paper box, flying through the air or lying in a ditch, would frighten the horse and cause it to shy. There is no evidence to show that the horse was a fractious horse and easily frightened.

The evidence fails to show any negligence on the part of the plaintiff.

The only time the plaintiff judged the speed of defendant's car was when he glanced back as he was maneuvering the horse around the spillway. The scene of the accident is approximately 25 to 30 feet north of the spillway, indicating that the defendant's car traveled a distance of over 200 feet, while the plaintiff and his horse traveled 25 to 30 feet. The deduction is, therefore, that the evidence fails to show excessive speed of defendant's car. There is no other evidence with reference to speed of the car than that herein related. No act on the part of the defendant in operating his automobile caused the horse to become frightened, to shy or walk backwards, or slip with his right hind foot off the shoulder of the road. The defendant could in no way anticipate the actions of the horse, under the circumstances, as he sought to pass it. Both the horse and its rider had a right to use that portion of the highway that they were using; likewise, the defendant and his wife had a right to use that part of the highway on which they were traveling at the time of the accident; so, we have no negligence in this respect.

In order that plaintiff may recover, it must be established by a preponderance of the evidence that, except for the negligence of the defendant, the accident would not have occurred. The most that can be said, under the facts in this case, is that the accident was unavoidable, and the mere fact that the accident happened raises no presumption that it was the negligence of either party which caused the injuries complained of. It frequently happens that accidents are unavoidable. The evidence fails to disclose which party, if either, is at fault.

"It is essential to the existence of negligence that there be some fault on the part of the person sought to be held liable; no liability exists for an unavoidable accident." 5 Am. Jur. 594, sec. 162.

"Where it is impossible to infer negligence from the established facts without reasoning irrationally and con-

trary to common sense and the experience of average men, it is not a question for the jury, and the court should direct a verdict for the defendant." *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb. 642, 54 N. W. 976.

As stated in *Turner v. Bennett,* 161 Ia. 379, 142 N. W. 999, we are not disposed to open the door of mitigation to heedless conduct on the part of any automobile driver. In an emergency it is often true that he has the advantage over the rider of a horse. But the right of each to use the road is precisely equal to that of the other. Neither can be held liable for a mere accident occurring through no fault on his part.

We conclude that the trial court was in error in submitting the cause to the jury. Its judgment is therefore reversed and the cause remanded.

REVERSED.

ROSE, J., dissenting.

As found by the jury on ample competent evidence, defendant, in my judgment, was guilty of actionable negligence in driving his automobile at an excessive speed in a place of danger close to the east curb of the pavement against plaintiff's horse, when nearly all of the paved roadway was a place of safety, being entirely free from traffic at the time.

Plaintiff had a right to ride horseback on the pavement, but rode on the unpaved shoulder of the highway except while going around the concrete spillway which was too wide for the horse to jump. It shied at a paper box; upon returning to the shoulder of the highway, its left rear hoof slipping back over the curb to the pavement. The horse's left rear leg and hip were broken when struck by defendant's automobile close to the east curb. Before leaving the shoulder of the pavement to make the short curve around the spillway, plaintiff looked backward and saw defendant's car approaching at a distance of about 200 feet. Except for the negligence of defendant, plaintiff would have avoided danger by going around the spillway. Defendant negligently drove his car into the place of danger without any excuse

for doing so. He was in the rear where he could see the horse and the rider and the roadway. The driving of the automobile close to the horse at the time and place under the circumstances was negligence for which the jury properly found defendant liable for resulting injuries and damages suffered by plaintiff.

Defendant was a farmer and knew the inherent tendency of a horse to shy suddenly when frightened, or was chargeable with such knowledge. Scientists account for this wild trait in the domesticated horse by the tendency of progenitors to shy when in panic from fear of ancient enemies in the native habitat of the aborigines. The rattle of reeds and the swish of long grass, where powerful wild animals waited in ambush to pounce upon their prey, were signals for the wild horse to jump aside and flee for life. The rattle of paper or the sight of a strange object may produce the same fear. This natural tendency to shy, jump aside and run to escape danger as the result of fright has been transmitted through domestication to the remotest progeny of the equine family. Whatever may have been the origin of this wild trait, the fact of it in the domesticated horse is common knowledge chargeable to motorists on the highways. Entertaining these views, I cannot concur in the opinion of the majority of the court. The judgment should have been affirmed.