H. A. CLARK, APPELLEE, v. VILLAGE OF HEMINGFORD, NE-
BRASKA, DEFENDANT, AND VILLAGE OF HEMINGFORD, A
MUNICIPAL CORPORATION, APPELLANT.

26 N. W. 2d 15

FILED FEBRUARY 7, 1947. No. 32164.

Boyd & Metz and L. H. Henderson, for appellant.

S. L. O'Brien and C. A. Fisher, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This is an appeal from a judgment awarding compensation to the plaintiff under the Workmen's Compensation Act. The defendant appeals. We affirm the judgment of the trial court.

Plaintiff filed his petition in the workmen's compensation court on June 6, 1944, designating "Village of Hemingford, Nebraska" as defendant. Plaintiff sought compensation for injuries arising out of and in the course of his employment on July 30, 1943, as a volunteer fireman. Summons was issued. Service by registered mail was attempted. On June 20, 1944, defendant filed a special appearance objecting to the jurisdiction of the court over its person, raising the question of the manner and sufficiency of the service; asserting that its true and correct corporate name was "Village of Hemingford, a Municipal Corporation"; that service had not been had upon it as required by law; and that plaintiff was not a volunteer fireman within the law.

On July 6, 1944, plaintiff requested an order that "Village of Hemingford, a Municipal Corporation" be added as a defendant. The order was granted. Alias summons was issued directing service upon both defendants. Personal service was had on July 19, 1944, upon W. A. Shaver, chairman of the board of trustees of the village of Heming-

ford, a municipal corporation; upon Charles Burlew, clerk of the board of trustees; and upon Charles S. Barr, Arthur Newman, and Andrew Iverson, members of the board of trustees; and on July 21, 1944, like service upon J. F. Scott, trustee. On July 31, 1944, defendant Village of Hemingford, a municipal corporation, filed a special appearance objecting to the jurisdiction of the court over its person for reasons hereinafter to be discussed.

Thereafter, the matter came on for hearing on April 27, 1945, before one of the judges of the compensation court. The two special appearances were overruled. Defendant, "Village of Hemingford a municipal corporation," filed its answer. Trial was had resulting in an award of compensation and medical expense to the plaintiff on May 10, 1945. Defendant waived rehearing and appealed to the district court. On November 5, 1945, trial was had and the cause taken under advisement, counsel to submit briefs. On June 22, 1946, the court overruled the special appearances, found generally in favor of the plaintiff, and entered an award in like amount to that entered by the compensation court.

Defendant appeals, setting out 18 assignments of error. Pursuant to the rules of this court we consider here in the order discussed, so far as is necessary to a decision, those "errors assigned and discussed." Rule 8 a 2 (4).

Defendant's first assignment of error is that the compensation court and the district court erred in not sustaining the special appearance of June 20, 1944. The second assignment is likewise and directed to the special appearance of July 31, 1944.

Section 48-173, R. S. 1943, provides for the filing of a petition in the compensation court. Section 48-174, R. S. 1943, provides: "Upon the filing of such petition a summons shall issue and be served upon the adverse party, as in civil causes, together with a copy of the petition. Return of service shall be made within seven days from the issuance of the summons. An acknowledgment on the back of the summons or the voluntary appearance of a defendant is

equivalent to service. In all cases the return day for the original summons shall be on or before seven days from the date of filing the petition." Section 48-175, R. S. 1943, provides: "Whenever the post-office address of the defendant is known or may be ascertained by the officer or person charged with the duty of serving same, such summons shall be served by such officer or person by registered mail, by placing a duly certified copy thereof in an envelope addressed to the party on whom it is to be served, at his office or place of residence, and depositing the envelope in any United States post office. The officer or person serving the summons by post, as aforesaid, shall place upon the envelope sufficient postage to carry the same to its destination, and shall place or cause to be placed thereon the words 'Return receipt requested,' and the words 'Deliver to addressee only.' In the event the party to be served is a corporation or a partnership a certified copy of the summons shall be directed to the proper officer, agent or member of such organization as is authorized by law to accept service of process. The officer in making his return of all processes, so served, shall append to and file with the original return the 'Return receipt' aforesaid. Any member of the compensation court may serve or cause to be served by post the summons as herein provided."

The service to which the first assignment is directed was obviously an attempt to secure service by registered mail. The transcript contains only a copy of the summons issued on June 6, 1944, followed by a "Return Receipt" addressed to the compensation court, showing that "Mayor, A. W. Shaver" on "6-8, 1944" receipted for a "Registered or Insured Article." Defendant contends that the copy of the summons contained in the envelope was not "certified" as required by the act; that the summons was not directed to the defendant in its correct corporate title; and that it had no "Mayor" and hence no one authorized to accept service as such. We need consider only one of these grounds. The transcript contains no showing of any content of the registered article, and hence no showing that a certified copy of

the summons was contained therein. Under these circumstances, we are of the opinion that service is not shown, and that the special appearance of June 20, 1944, should have been sustained.

As to the special appearance of July 31, 1944, and the service there questioned, defendant contends that summons was issued before the first summons had been returned "not summoned," citing section 25-506, R. S. 1943; and that service is required to be made by registered mail and upon a person authorized to accept service of process under section 48-175, R. S. 1943, where the post-office address of defendant is known or may be ascertained.

It is to be remembered that defendant objected to the first service in part because of an alleged error in the stating of its corporate name and that its correct name was "Village of Hemingford, a municipal corporation." It then was made a party defendant by that name, and summons issued commanding service upon that so-named defendant. If defendant is correct in its distinction as to name, a matter which is not necessary to be decided, then the summons of July 17, 1944, was the first summons issued as to it after it became a party. The summons was not an alias as to it. But even if treated as an alias summons, it does not follow that it was a void summons. See Ensign v. Roggencamp, 13 Neb. 30, 12 N. W. 811; Walker v. Stevens, 52 Neb. 653, 72 N. W. 1038. But, accepting defendant's contention for this purpose, it does not follow that the service had under the writ was void. Defendant alleged the date of the accident as July 30, 1943. Plaintiff had one year after the accident in which to file his petition. § 48-137, R. S. 1943. The statute of limitations not having run, the summons, if not good as an alias, was good as an original summons. Burroughs v. Teitelbaum, 309 Mich. 251, 15 N. W. 2d 151; 50 C. J., Process, § 49, p. 464.

This brings us to defendant's contention that service is required to be made by registered mail. Sections 48-173, 48-174, and 48-175, R. S. 1943, originally were enacted as a part

of section 13, chapter 57, Laws 1935. Four methods of service or its equivalent were provided generally: Service "as in civil causes, together with a copy of the petition"; an acknowledgment on the back of the summons or a voluntary appearance to be the equivalent of service (§ 48-174, R. S. 1943); and service by registered mail (§ 48-175, R. S. 1943). It is clear from a reading of the original act, as well as the sections as they now stand, that the Legislature intended to facilitate and expand, not to restrict the methods of service. Similar provisions applicable to municipal court process are found in section 26-124, R. S. 1943, and in section 27-204, R. S. 1943, in actions in justice of the peace courts. In the latter section, subject to the conditions therein set out, service by registered mail is to be had "unless otherwise requested by the plaintiff." This is a clear recognition of legislative intent of alternate methods of service. The municipal court and justice of the peace provisions were enacted in 1933. Laws 1933, ch. 44, § 1, p. 250.

As has been pointed out, the provision for service by registered mail was enacted for compensation cases in 1935. Prior thereto the statute provided for service of summons "as in civil causes, together with a copy of the petition." § 48-139, Comp. St. 1929. The new act of 1935, which repealed the existing statute, was clearly for the purpose of providing additional and alternate methods of service such as then existed for municipal and justice of the peace court causes.

Section 17-504, R. S. 1943, provides: "The corporate name of each city of the second class or village shall be the 'city (or village) of ........,' and all and every process and notice whatever affecting such corporation shall be served upon the mayor or chairman of the board of trustees, or, in his absence, upon the clerk, or, in the absence of such officers, then by leaving a certified copy at the office of the clerk." See, also, §§ 25-511, 26-125, and 27-205, R. S. 1943. Plaintiff proceeded to serve process as authorized by section

48-174 in the method required by section 17-504. The sufficiency of this service if authorized is not questioned. We are of the opinion that it was authorized; that the service was good; and that the special appearance of July 31, 1944, was properly overruled. It follows that the overruling of the special appearance of June 20, 1944, was error without prejudice.

This general statement is introductory to a consideration of the assignments next to be considered.

An oil transport caught fire at a bulk station in the village of Hemingford. It was driven some distance away from the station and then abandoned at about the center of a triangle formed by two grain elevators and a grain storage bin. A fire alarm was sounded. Plaintiff as a volunteer fireman answered the alarm, and while fighting the fire was severely burned. The burns were caused by the explosion of an auxiliary gas or fuel tank located on the front end of the transport.

The compensation court judge and the district court found in part that plaintiff suffered total permanent disability to the third and fourth fingers of the right hand, and to the second, third, and fourth fingers of the left hand; some limitation of motion to the left arm; and some disability to the body as a whole from scars and nervousness; and held the disability to be 20 percent of the right hand, 40 percent of the left hand, and 10 percent of the left arm, resulting in 35 percent permanent partial disability of the body as a whole.

Defendant, contending that the findings of fact are not conclusively supported by the evidence as disclosed by the record, requests consideration de novo upon the record. § 48-185, R. S. 1943.

Plaintiff was hospitalized at Alliance for the first few hours following the accident, and then was removed to a hospital at Scottsbluff. Plaintiff offered the testimony of the doctor who treated him at Alliance on July 30, 1943, and who examined him on April 27, 1945, and again briefly

during the progress of the trial in November 1945. The doctor described his burns as second-degree burns. He examined plaintiff during the trial and testified that he had a limitation of the motion of his left arm caused by scarred muscle, and could only lift it 20 or 30 percent of the distance that a normal person can—the upward movement being to the line of his shoulder. As of April 1945, he described the condition of his hands. The fourth and fifth fingers of the right hand, and the third, fourth, and fifth fingers of the left hand "were clawed" and could not be used the same as if not clawed. His arms and face were scarred and these would probably get worse as second-degree burns contract, are more susceptible to injury and to heat and cold, and do not have normal elasticity. His injuries were permanent. He was asked to state the percentage of the reduction of plaintiff's effectiveness as a radio mechanic from the condition of his hands, and said he did not have an opinion as to that, and was unable to answer it.

Defendant contends that there being no testimony of the expert witness as to the percentage of disability, the finding of the trial court that the plaintiff suffered a 35 percent permanent partial disability of the body as a whole cannot be sustained.

But that was not all of the testimony. Plaintiff testified that his five fingers were totally disabled and the tendons entirely destroyed. He also testified as to the condition of his left arm and shoulders, and other scars similarly described by the doctor; and that his injuries were followed by nervousness. Defendant offered no evidence to the contrary.

As a general rule expert testimony is not required in all cases where it is relevant. In personal injury cases where the injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, the use of expert testimony is not legally necessary. 32 C. J. S., Evidence, § 569, p. 394; 20 Am. Jur., Evidence, § 778, p. 649; Arais v. Kalensnikoff,

10 Cal. 2d 428, 74 P. 2d 1043, 115 A. L. R. 163; Commonwealth Life Ins. Co. v. Harmon, 228 Ala. 377, 153 So. 755; 22 C. J., Evidence, § 823, p. 730. Here the cause of the injuries and their permanency is not questioned. They are objective. The trial court heard the testimony and was able to observe the injuries. It was the trial court's responsibility to determine the extent of the disability. The expert's opinion, under these circumstances, as to that would be advisory and not controlling. The absence of expert testimony here does not render the award made one "entirely without evidentiary support." We see no reason for reaching a conclusion differing from that of the trial court.

Defendant contends that the evidence shows that the plaintiff was guilty of willful negligence and hence should be denied compensation.

Plaintiff testified that at the time of the explosion, which resulted in his being sprayed with fire, he and others were playing a stream of water on the grain bin. Defendant offered evidence that from where plaintiff was standing, the grain bin was a greater distance from the plaintiff than was the burning transport. Plaintiff testified that he saw an attempt made to play water on the burning transport, but that it was too far to do any good, so they turned water on the grain bin as "it started to burn." Defendant argued that the conclusion must be that the attempt to spray water on the burning transport necessarily succeeded, and that cold water did reach the blazing truck. Such a conclusion is directly contrary to the testimony of the fire chief, who, testifying for defendant, said: "* * * there was water being played on the fire at the time of the explosion, but the water never hit the truck for the heat was too intense to get close enough to hit it."

The evidence is that the vents were open on the top of the cargo tank and that it did not explode. There were, as a part of the transport equipment, three fuel tanks for motive power. These three exploded. Plaintiff testified that there were minor explosions of the tires and then the prin-

cipal explosion with the resulting injury to him. The fire chief testified that the auxiliary tank, which first exploded, "shot up, it didn't spray out," and next the end of a tank behind a fender blew out, the fender made a "funnel out of it," and that showered the flame toward the plaintiff, causing his injury.. We find no statement as to the elapsed time between the two explosions, only one of which plaintiff remembers. Plaintiff testified that he knew oil was highly inflammable (a fact which was quite obvious at the time). Defendant argues that unless plaintiff "intended deliberately to subject himself to serious injury and likely death, he would have immediately retired to a safe distance from the burning transport," and that his failure to do so rendered him guilty of willful negligence.

Section 48-127, R. S. 1943, provides: "If the employee is injured by reason of his intentional willful negligence, * * * neither he nor his beneficiaries shall receive any compensation under the provisions of this act." Section 48-151, R. S. 1943, provides: "For the purpose of this act, willful negligence shall consist of (1) deliberate act, (2) such conduct as evidences reckless indifference to safety, * * *."

Clearly, there was no deliberate act as that term has been construed. In Moise v. Fruit Dispatch Co., 135 Neb 684, 283 N. W. 495, we held that the word "willful" as used in the Workmen's Compensation Act, in its relation to negligence of an employee while in the performance of duty, means deliberate act; conduct evidencing reckless indifference to safety; more than want of ordinary care but not necessarily amounting to wantonness but approximating it in degree. See, also, Farmers Grain & Supply Co. v. Blanchard, 104 Neb. 637, 178 N. W. 257; Ashton v. Blue River Power Co., 117 Neb. 661, 222 N. W. 42; Struve v. City of Fremont, 125 Neb. 463, 250 N. W. 663; Richards v. Abts, 135 Neb. 347, 281 N. W. 611.

Considering the task plaintiff was performing, we find nothing here indicating "willful" negligence.

Defendant contends also that the evidence is insufficient to bring plaintiff within the benefits of the Workmen's Compensation Act. It relies upon the provisions of section 48-115, R. S. 1943, which is in part as follows: "The terms 'employee' and 'workman' are used interchangeably and have the same meaning throughout this act. The said terms include the plural and all ages and both sexes, and shall be construed to mean:

"(1) Every person in the service of the state or of any governmental agency created by it, under any appointment or contract of hire, expressed or implied, oral or written, but shall not include any official of the state, or any governmental agency created by it, who shall have been elected or appointed for a regular term of office, or to complete the unexpired portion of any regular term; *Provided,* that (a) for the purposes of this act, volunteer firemen of any fire department of any city or village, which fire department is regularly organized under the laws of the State of Nebraska, shall be deemed employees of such city or village while in the performance of their duties as members of such department; (b) members of such volunteer fire department, before they are entitled to benefits under this act, shall be recommended by the chief of the fire department for membership therein to the mayor and city commission, the mayor and council or the chairman and board of trustees, as the case may be, and upon confirmation, shall be deemed employees of the city or village; * * *." This provision, following the "Provided," was placed in the statute by an amendment in 1927, the title to the act reciting "* * * that members of duly organized volunteer fire departments in cities or villages, injured in the performance of their duties as members thereof, shall receive compensation from such cities or villages; * * *." Laws 1927, ch. 39, p. 169. In the revision, resulting in what is now section 48-115, R. S. 1943, there were slight changes in the language not important to be noted here.

Defendant contends that there must be proof (1) of the existence of a fire department regularly organized under the laws of the State of Nebraska; (2) that plaintiff was a member of such organization; and (3) that plaintiff was recommended by the chief of the department to its board of trustees and that he was confirmed as such a member by said board.

The obvious intent of the Legislature in enacting the amendment of 1927 was to make certain that volunteer firemen, meeting the requirements of the act, should for the purposes of the act be included within the classification of persons "in the service" under "any appointment or contract of hire, express or implied, oral or written." The act is a remedial one and is to be liberally construed and its beneficent purposes not to be thwarted by technical refinement of interpretation. Moise 'v. Fruit Dispatch Co., *supra*. The Legislature required that there be a regularly organized department as distinguished from an unorganized group; it required membership in such an organization and thereby excluded the purely volunteer fighter of fire as distinguished from a regular volunteer; it required recommendation by the chief and confirmation by the governing board of the municipality, and thereby placed the personnel as well as the number of firemen to be included within the benefits of the act in the control of the municipality. Consideration must be given to the broad "express or implied, oral or written" and the "for the purposes of this act" provisions in the act. Clearly, the Legislature did not intend first to include the regular volunteer within the benefits of the act, and then exclude most or all of them by conditions and restrictions. The conditions and restrictions are to be liberally construed in the light of the purpose to be accomplished.

We turn then to the evidence as to the organization of the fire department at Hemingford. The accident occurred on July 30, 1943, and trial was had in November 1945. Defendant produced a witness who testified that he was secre-

tary of the Hemingford Volunteer Fire Department and had been such for five years, and that he had custody of its records and files. He produced and defendant offered in evidence the "Constitution and By-Laws of the Hemingford Volunteer Fire Department" which had been in force and effect for the period at least covered by the witness' service as secretary. He produced and testified as to the contents of the records and that the original or older records had been destroyed in a fire. Defendant also offered in evidence its ordinances adopted in 1940, which recited that "All volunteer fire companies which have heretofore been or shall hereafter be organized according to law in this village, shall be and constitute the fire department of the Village of Hemingford, Nebraska."

On October 6, 1942, the defendant's board of trustees allowed $50 to the volunteer fire department to send delegates to a firemen's convention. Each year it levied assessments for the fire fund. It purchased and maintained fire-fighting equipment and placed it at the disposal of the department.

In the quoted act, the Legislature did not set out any requirements as to what shall constitute a regularly organized fire department. Defendant cites us to no such requirements. The Legislature obviously contemplated such an organization as this evidence shows existed in defendant village, and which it recognized to be such a department. We think the evidence sufficient to meet the requirements of the act.

This brings us to defendant's contentions that plaintiff failed to prove membership in the department. The evidence is that plaintiff on February 11, 1942, made written application for membership in the department; that thereafter he was notified that he had been investigated by the investigating committee and was accepted as a member. Thereafter he attended meetings of the department, took a course of training in firemanship, attended and fought fires as a member of the department. His name was carried

on the roll of active members of the department filed with the village clerk on October 1, 1942, read to the board of trustees, and recorded under the caption "Members are" on October 6, 1942. His name, among others, was certified to the clerk of the district court for jury exemption purposes in October 1942. At the time of the fire involved herein, plaintiff reported at the fire, took his station as a member and with the knowledge of the chief engaged in the duties of a member in fighting the fire. Defendant's contention that plaintiff failed in his proof is based on the failure to prove exact compliance with provisions of the constitution and bylaws of the department in the following particulars: (1) There was no showing that an investigating committee was appointed, that it investigated the plaintiff, and that it reported to a meeting of the department as required by the bylaws; (2) there was no showing that plaintiff's application was referred to the investigating committee as required; (3) there was no showing that his application was voted upon by ballot as required; (4) there was no showing that plaintiff ever signed a roll book containing a promise to observe the constitution and bylaws of the department; and (5) there was no showing that plaintiff took these obligations and hence never became a member as required. These contentions all go to the internal organization and operation of the department as between the department and the member. Without doubt the department recognized plaintiff as a fully qualified member. We think the showing sufficient to establish membership in the department within the contemplation and purpose of the act.

Defendant's next contention goes to the sufficiency of the proof that plaintiff was recommended for membership to the board of trustees of defendant and was confirmed by the board. The record shows that on October 1, 1942, the roll of active members of the department was filed in the records with the village clerk. The minutes of the regular meeting of the board on October 6, 1942, show: "The

roll of active members of the Hemingford Volunteer Fire Department on October 1, 1942 was read. Members are: * * *." This was followed by a list of names including that of the plaintiff. Then follows: "No further business it was moved and seconded to adjourn. Carried." Defendant contends that this does not establish either recommendation or confirmation.

Defendant relies upon our decision in Eagle Indemnity Co. v. Village of Creston, 129 Neb. 850, 263 N. W. 220, wherein we pointed out the requirements of the act, and that the evidence there disclosed no list of firemen ever was presented to the village board, nor was any confirmation made, and hence the firemen there involved were not employees of the village. The case does not help us, for we are here considering not are recommendation and confirmation required, but rather does what was done here show recommendation and confirmation within the contemplation of the act? The recommendation required by the act in effect is a nomination. The confirmation is the act of ratifying or sanctioning the nomination. The confirmation is not the initial step, but the second of two acts which together create the contract of hire, for the purposes of the compensation act, by which the volunteer firemen shall be deemed and become employees of the village and entitled to the benefits of the Workmen's Compensation Act. Under the statute the contract of hire may be "express or implied, oral or written." The Legislature did not restrict or define the method of recommendation or confirmation, or require any specific formalities of motions, record, or proof. Obviously, the purpose of submitting the roll of active members to the board was to take the necessary step of nomination. Just as obviously, when the board, having the roll before it, caused to be entered on its minutes the statement "Members are," it thereby ratified and sanctioned the appointment. That was its purpose. That entry recognized the confirmation of members so submitted, including plaintiff. The status of the plaintiff did not change thereafter.

Clearly the requirements and the purposes of the act were met when plaintiff proved that his name was submitted to the board as an active member of the department, and when the board recognized and approved that membership. The evidence shows a recommendation and confirmation of the plaintiff within the requirements and for the purposes of the act.

We affirm the judgment of the district court.

Plaintiff requests an allowance of attorney's fees for services in this court. Section 48-125, R. S. 1943, authorizes such an allowance to be taxed as costs. Under this statute a fee of $200 is allowed.

AFFIRMED.