IN RE CLAIM FOR COMPENSATION ON ACCOUNT OF THE DEATH OF LEE W. SCHROEDER. MAYE S. SCHROEDER, WIDOW, APPELLEE, V. L. M. SHARP, FIRST, REAL AND TRUE NAME UNKNOWN, APPELLANT.
No. 32822.

LOUISE ATWOOD, FOR HERSELF AND MINOR CHILD, LOIS JEAN ATWOOD, APPELLEE, V. L. M. SHARP, DOING BUSINESS AS SHARP CONSTRUCTION COMPANY, ET AL., APPELLANTS.
No. 32823.
43 N. W. 2d 572

Filed July 13, 1950.

*Kepler & Knicely,* for appellants.

*P. J. Heaton, Harold E. Connors,* and *William P. Mullen,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

These are companion cases for death benefits under the Workmen's Compensation Act. The issues and the facts involved here are the same. The compensation court and the district court awarded compensation. We affirm the judgment of the trial court.

The evidence shows that the defendant was engaged in drilling an irrigation well for one Paul Nass. The well-digging machinery consisted of a motor-driven truck, some 10 or 12 feet in length, with motor and cab on the front end. Mounted on the rear of the truck was the motor-driven well-digging machinery. Among other things, this machinery consisted of a boom hinged at the top of the truck, and when it was erected it was 47 feet high. It was secured, when erected, by pins at the bottom and by cables from the top of the boom and attached to the front bumper of the truck. It was raised and lowered by the motor of the well equipment and lowered forward.

The well was located 13 feet south of a high voltage electric power line.

The equipment was so placed that the front end of the truck was toward the power line and the entire truck was between the power line and the well. The well-digging operations consumed at least two days. The defendant's crew of employees consisted of a foreman and two men. These men knew of the dangers of the high voltage line and the danger involved should the boom come in contact with the electric line.

When the well was completed, a pump head standing above the ground was temporarily placed on it and the well tested by means of a belt from the pump to a separate tractor engine. In order to remove the well-digging equipment and lower the boom without allowing it to touch the wire, it was necessary to move the truck backward and that necessitated the pulling or removal of the pump head as it interfered with that movement.

After the well was tested for some hours the foreman decided to go and get Mr. Nass. Mr. Nass' son was at the well at the time. The truck and equipment were in place, the boom erect, and the cables attached. The motors were not running. The pump was operating by means of the tractor engine and belt.

There is a conflict in the evidence as to the instructions given the two employees before the foreman and the son left to get Mr. Nass. Mr. Nass' son stated that the foreman told the men, " '* * * I don't want you boys to touch anything until I get back from down there.' * * * 'Don't move the truck or do a thing with it until I get back' "; "* * * 'Leave the pump running until we get back' "; "* * * 'Before this truck can be moved, * * * we will have to pull the pump head off and back the truck over the casing.' " He testified that the foreman told the boys not to touch anything because they would get electrocuted and " 'If you boys move that truck and that boom hits that power line, you will be pushing up daisies.' " His testimony was that when he and the foreman left to

get Mr. Nass, the two men were standing on the west side of the truck under the shade of the trees.

The foreman testified on direct examination as defendant's witness, that he told them, "* * * we couldn't possibly let that boom down before we could move the machine and disconnect the pump." Asked as to what he told them they should or should not do while he was gone, he replied, "* * * about the only thing I told them —they weren't to let that boom down until we had pulled the pump out so we could move the rig back," and that when he and young Nass left to get Mr. Nass, the two employees were not "doing anything except pulling up the pump."

The foreman and young Nass were absent 15 minutes. When they returned the belt from the tractor to the pump had been removed and the tractor engine was running free; the motor for the truck was running; the motor for the well-digging equipment was running; the truck had been moved backward, according to the Nasses about six inches, and according to the foreman not "over four feet"; the lever that controlled the lowering of the boom had been used; the cables were loose and resting on the front bumper; and the boom was on an incline and its top touched and extended over the electric line about two or three inches. The two employees were lying in front of the truck, one body across the other and not in touch with any electric contact. Both had been electrocuted.

The widow of one employee brought the action for herself; the other for herself and minor child.

The defense is willful negligence of the deceased employees and that the death of the employees did not arise out of the employment.

The statutes provide:

"If the employee is injured by reason of his intentional willful negligence, or by reason of being in a state of intoxication, neither he nor his beneficiaries shall receive

any compensation under the provisions of this act." § 48-127, R. S. 1943.

"(7) For the purpose of this act, willful negligence shall consist of (a) deliberate act, (b) such conduct as evidences reckless indifference to safety, or (c) intoxication at the time of the injury, such intoxication being without the consent, knowledge or acquiescence of the employer or the employer's agent." § 48-151, R. S. Supp., 1949.

"In the workmen's compensation law the word 'wilful,' in its relation to negligence of an employee while in the performance of duty, means deliberate act; conduct evidencing reckless indifference to safety; more than want of ordinary care but not necessarily amounting to wantonness but approximating it in degree." Moise v. Fruit Dispatch Co., 135 Neb. 684, 283 N. W. 495. See, also, Clark v. Village of Hemingford, 147 Neb. 1044, 26 N. W. 2d 15.

The burden of proof to establish willful negligence of the injured employee is on the employer. Hoff v. Edgar, 133 Neb. 403, 275 N. W. 602; Rexroat v. State, 142 Neb. 596, 7 N. W. 2d 163; 58 Am. Jur., Workmen's Compensation, § 439, p. 859; 71 C. J., Workmen's Compensation Acts, § 878, p. 1069.

" 'Negligence is not presumed; the mere happening of an accident does not prove negligence.' * * * 'The burden of proving a cause of action is not sustained by evidence from which negligence can only be surmised or conjectured.' " Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711.

"Where there is no eyewitness, no direct evidence of the accident causing the injury, the facts and circumstances may be proved by circumstantial evidence, and the presumption is raised by the instinct of self-preservation on behalf of the deceased that he was not guilty of contributory negligence, but was in the exercise of due care and caution for his own safety, unless the contrary is shown." Engel v. Chicago, B. & Q. R. R. Co., 111 Neb. 21, 195 N. W. 523. The presumption here stated applies

to charges of negligence as well as of contributory negligence.

In reviewing the evidence in the light of these rules we accept the testimony of the foreman, as the trial court evidently did. The testimony of young Nass is not in entire conflict with that testimony. The foreman outlined what had to be done before the boom could be lowered. His instructions fairly construed were not that nothing should be done, but rather that "they" were not to let the boom down until the pump was pulled out, so that the truck could be moved back. The statement of young Nass that "if you boys move that truck and that boom hits that power line" implies permission to move the truck, but to avoid hitting the power line in lowering the boom. When the foreman left the job the two employees were "pulling up the pump." That was the first thing that was to be done before removing the truck, and the foreman knew that the two employees were doing it. The evidence also shows that the truck had been moved; that the cables had been loosened; and that there was a miscalculation of distance of a few inches in whether or not the boom would clear the wires when being lowered.

But that is not all. There is no evidence here as to which of the two employees, if either, did the acts that were done after the foreman left the job. As we said in Meyers v. Neeld, 137 Neb. 428, 289 N. W. 797, the evidence fails to disclose which party, if either, was at fault, and it is essential to the existence of negligence that there be some fault on the part of the person sought to be held liable. Was Mr. Atwood negligent? Was Mr. Schroeder negligent? The answer to those questions on this record is in the field of speculation and conjecture. The presumption is that each one was not negligent. The contention of the defendant is based on the assumption that each of the two men severally did one or more of the acts charged. The evidence only is that someone did. It

necessarily follows that the defense of willful negligence fails.

The defendant further contends that the employer has the right to prohibit an employee from working in a dangerous place and that these employees were prohibited from working in the place where they were killed, and, hence, that the injury did not arise out of or in the course of the employment. As above pointed out, the evidence does not sustain the fact contention upon which this argument is based.

The judgment of the trial court is affirmed.

The trial court allowed to the plaintiff's attorneys in each case an attorneys' fee of $325, to be taxed as costs. Under the provisions of section 48-125, R. S. 1943, there is allowed a fee of $175 to the plaintiff in each case for services in this appeal, to be taxed as costs.

AFFIRMED AND ATTORNEYS' FEES ALLOWED.