**Phyllis Ann NORTHRUP, Executrix of the Estate of Mervin Halbert, Deceased, Appellee,**

v.

**The ARCHBISHOP BERGAN MERCY HOSPITAL, a corporation, Appellant.**

No. 77–1873.

United States Court of Appeals, Eighth Circuit.

March 17, 1978.

Decided May 10, 1978.

Ronald H. Stave, Omaha, Neb., for appellant; Lee H. Hamann and William E. Gast, Omaha, Neb., on brief and appendix.

Richard J. Dinsmore, Omaha, Neb., on brief, for appellee.

Before ROSS and HENLEY, Circuit Judges, and LARSON, Senior District Judge.[*]

HENLEY, Circuit Judge.

Phyllis Ann Northrup, daughter of deceased Mervin Halbert and executrix of his estate, brought this diversity action against the Archbishop Bergan Mercy Hospital (the Hospital). She claimed that, through the Hospital's negligence, Halbert, while confused and disoriented, was permitted to leap to his death from his fifth story hospital window. The District Court[1] denied the Hospital's motions for directed verdict, judgment notwithstanding the verdict, and a new trial and entered judgment in accordance with a jury verdict awarding Mrs. Northrup $30,000.[2] We affirm.

Mervin Halbert was admitted to the Hospital on July 8, 1974. At the request of his treating physician, surgery was performed on July 16, 1974. After surgery, Halbert was taken to the Hospital's intensive care unit before finally being transferred, on July 25, 1974, to room 539.

According to Halbert's hospital record, to which extensive references were made at trial, Halbert exhibited confused, disoriented, and somewhat combative behavior after the surgery. At times, however, he would rest quietly. Efforts were made to secure Halbert to his bed and at various times double bedside rails, a vest restraint, a locked "posey" waist restraint, and a tranquilizer (librium) were employed. Wrist restraints were available but were not utilized, apparently because of the treating physician's failure to authorize them. There was also testimony that, at various times, the librium did not have the desired effect.

It appears from the evidence that, during the twenty-four hour period directly preceding the accident, which occurred at 11:40 p. m. on August 1, 1974, Halbert was very restless and not only tore his vest apart, but shouted that he was going home. On the night of the accident, a nurse recorded the difficult time she was having with Halbert as late as 10:00 p. m. At 11:00 p. m., that night, Halbert appeared to have been resting quietly and, at 11:25 p. m., the nurse's aide who had been sitting with him left to go home. At 11:40 p. m., a nurse's aide on the next shift discovered that Halbert had broken from his restraints and was hanging

---

[*] Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

1. The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

2. At the completion of appellee's evidence, the District Court directed a verdict in favor of Dr. Richard J. Fangman, the treating physician. Mrs. Northrup has not cross-appealed from that judgment.

from his window. He eventually fell and died.

In this appeal, the Hospital contends that the District Court should have granted its motion for a directed verdict, judgment notwithstanding the verdict or, alternatively, a new trial because: (1) appellee failed to produce sufficient expert testimony establishing her claim for relief; (2) the Hospital was not negligent but exercised the care reasonably required under the circumstances; and (3) the District Court inconsistently instructed the jury.

## I.

■ The Hospital contends that appellee failed, in the District Court, to offer sufficient expert testimony to establish her negligence claim.

According to Nebraska law, which we apply to this diversity action, expert testimony is not legally necessary when the conclusion to be drawn from the facts does not require specific, technical, or scientific knowledge and the circumstances surrounding the injury are within the common experience, knowledge, and observation of laymen. See *Eiting v. Godding,* 191 Neb. 88, 91, 214 N.W.2d 241, 243–44 (1974); *Yost v. Lincoln,* 184 Neb. 263, 265–66, 166 N.W.2d 595, 597 (1969); *Yount v. Seager,* 181 Neb. 665, 671, 150 N.W.2d 245, 250 (1967); *Clark v. Hemingford,* 147 Neb. 1044, 1052–53, 26 N.W.2d 15, 20 (1947). This is consistent with the general rule. See *generally* Annot., 40 A.L.R.3d 515, 518–19 (1971).

Before the District Court, Mrs. Northrup made the following specific allegations of the Hospital's negligence: (1) failure to install guards or locks on its windows; (2) failure adequately to restrain and secure Halbert; (3) failure to supervise Halbert properly while he was a patient; and (4) failure to keep the treating physician sufficiently informed of Halbert's mental condition.

We think these allegations were within the comprehension of laymen and required only common knowledge and experience. Absent, are issues implicating technical, complex, or scientific evidence, for which expert testimony might be necessary.

## II.

■ Appellant also argues that the evidence at trial was insufficient to establish the Hospital's negligence and the Court should have taken the issue from the jury or, alternatively, granted a new trial.

An appellate court is not free to substitute its view of the facts for that of the jury unless it can hold that reasonable minds, viewing the evidence in a light most favorable to the prevailing party, could only have found otherwise. *Voegeli v. Lewis,* 568 F.2d 89, 92 (8th Cir. 1977); *Russ v. Ratliff,* 538 F.2d 799, 804 (8th Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). See 9 C. Wright & A. Miller, Federal Practice and Procedure § 2524 at 541–44 (1971). The test in this Circuit was announced in *Hanson v. Ford Motor Co.,* 278 F.2d 586, 596 (8th Cir. 1960), *cited in, Griggs v. Firestone Tire & Rubber Co.,* 513 F.2d 851, 857 (8th Cir.), *cert. denied,* 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). There, the Court held that in determining whether an issue should be taken from the jury, the trial court and the appellate court are:

> (1) to consider the evidence in the light most favorable to the . . . plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved . . . in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.[3]

After carefully reviewing the transcript together with the negligence principles enunciated by the courts of Nebraska, we

---

**3.** The Nebraska Supreme Court has articulated a substantially similar test. See *Jensen v. Shadegg,* 198 Neb. 139, 251 N.W.2d 880, 882–83 (1977); *Kortus v. Jensen,* 195 Neb. 261, 237 N.W.2d 845, 848 (1976); *Wees v. Creighton Memorial St. Joseph's Hospital,* 194 Neb. 295,

are unable to say that reasonable minds viewing the evidence in a light most favorable to the appellee could only have found against her.

Under Nebraska law, a hospital must exercise the degree of care, skill, and diligence generally followed by hospitals in the community or in similar communities. *See Foley v. Bishop Clarkson Memorial Hospital,* 185 Neb. 89, 93, 173 N.W.2d 881, 884 (1970). The hospital is obligated not only to guard against a patient's known physical and mental conditions "but also against such conditions . . . it should have discovered by the exercise of reasonable care." *Id. See Wees v. Creighton Memorial St. Joseph's Hospital,* 194 Neb. 295, 231 N.W.2d 570, 573 (1975).

The record is replete with instances of Mervin Halbert's confused, disoriented, and combative mental state. On several occasions, he successfully escaped from the vest restraint and posey belt. He also shouted to the nurses that he was going home. On the night of the accident, a nurse testified

that Halbert was particularly troublesome. There was testimony that had a nurse been in the room at 11:40 p. m., when Halbert was found hanging from the ledge, the accident would not have occurred.[4] Moreover, the windows in Halbert's hospital room were not sealed. Apparently, there were rooms on Halbert's floor with sealed windows. In short, viewing the record as a whole, we cannot say that the District Court erred in denying the Hospital's motion for a directed verdict or judgment notwithstanding the verdict.

Nor do we think the District Court abused its discretion in refusing to grant a new trial. *See generally* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2806.[5]

The judgment of the District Court is affirmed.[6]

---

231 N.W.2d 570, 572 (1975) *citing Wrasse v. Gustavson,* 193 Neb. 41, 42–3, 225 N.W.2d 274, 276 (1975).

**4.** There was some testimony that, because Halbert was "resting quietly" at 11:00 p. m., Hospital regulations did not require a nurse to be in Halbert's room at 11:40 p. m., when the accident occurred. Whether, in light of Halbert's previous successful efforts to escape from his restraints, coupled with his particularly troublesome behavior on the night of the accident, reasonable care required an attendant to be in the room or close enough to monitor carefully his behavior was for the jury.

**5.** The Hospital relies on *Wees v. Creighton Memorial St. Joseph's Hospital, supra,* in support of its argument. There, the patient, who had been admitted for psychiatric care, complained to a nurse of a sore arm. It was later determined that her arm was broken. A doctor testified that the broken arm probably had resulted from a fall. There was no evidence of a fall except for the testimony of plaintiff, who was unable to remember any of the details. Plaintiff alleged, similar to Mrs. Northrup in this case, that the hospital had failed to provide reasonable supervision and to restrain plaintiff in her bed. The Nebraska Supreme Court affirmed the trial court's dismissal of plaintiff's case.

Here, however, unlike *Wees, supra,* there was specific evidence that Halbert had escaped from his restraints and was found hanging from his window ledge. Thus, the causation problems present in *Wees, supra,* are absent.

**6.** We also reject the Hospital's argument that because the District Court improperly charged the jury with inconsistent instructions the case should be reversed. The Court, in its memorandum granting Dr. Fangman's directed verdict motion, stated that the evidence clearly showed the doctor was informed of Mr. Halbert's condition. Yet, in a jury instruction the Court charged the jury in accordance with appellee's theory, which predicated the Hospital's negligence, in part, on its failure sufficiently to inform the treating physician of Halbert's mental condition.

First of all, while the Court's statement in its memorandum indicates the doctor was informed of Halbert's "condition," the jury instruction refers to the patient's "mental condition." In addition, at oral argument, in response to questions from the bench, there were suggestions that the time span during which the District Court found Dr. Fangman to have been sufficiently informed of Halbert's condition was different from the time at which appellee alleged the Hospital failed to inform the doctor of Halbert's mental condition. Thus, the inconsistency may be more apparent than real.