JOHN MANSFIELD, APPELLANT, V. ANDREW MURPHY & SON
ET AL., APPELLEES.

298 N. W. 749

FILED JUNE 20, 1941.  No. 31088.

*Reed, Ramacciotti, Robinson & Hruska* and *Ephraim L. Marks*, for appellant.

*Fred N. Hellner, contra.*

Heard before PAINE, CARTER and MESSMORE, JJ., and ELDRED and TEWELL, District Judges.

ELDRED, District Judge.

This action was brought by John Mansfield to recover damages for personal injuries sustained as a result of alleged negligence on the part of the defendant Andrew Murphy & Son, Inc.  Plaintiff at time injured was an employee of Ford Bros. Van & Storage Company; but no negligence is charged as against that defendant, it being made a party defendant for the reason that it is obligated to make payments to plaintiff under the workmen's compensation act of Nebraska.

The defendant Andrew Murphy & Son, Inc., conducts an automobile and truck sales service and garage business in the city of Omaha, and owns, among other equipment, a four-ton truck equipped with a special power hoist, capable of hoisting 20,000 pounds or more; the services of which hoisting truck with an operator were offered to the public for hire. On the 13th day of January, 1939, plaintiff's employer, Ford Bros. Van & Storage Company, had contract with Sanford Direct Mailing Company to deliver to its plant on the second floor in the Baum building at Thirteenth & Farnam streets in Omaha a printing press weighing approximately 3,000 pounds. In connection with said delivery it was necessary to hoist the press from a truck of the Ford Bros. Company located in the alley at the rear of said building to the Sanford Company's plant on the second floor thereof, a distance of about 30 feet. Defendant Ford Bros. Company was not equipped with a power hoist necessary to perform the job, and it is alleged in plaintiff's amended petition that Ford Bros. Company therefore contracted orally with the defendant Andrew Murphy & Son, Inc., to hoist the said press from the defendant Ford Bros. Company's truck to the second floor of said Baum building. The said defendant Andrew Murphy & Son, Inc., sent its hoisting truck and operator, one H. E. Genandt, to said Baum building. When the said H. E. Genandt arrived at the scene of the accident with the "hoisting truck," the defendant Ford Bros. Company had already installed its own block and tackle to the "I" beam at the top of the Baum building. Said block and tackle hung down to about the second landing of said building above the street; said Ford. Bros. Company had also affixed chains around the press preparatory to having it hoisted. It is further alleged in petition that the said Genandt, "without making a proper inspection of the equipment or apparatus theretofore set up, placed and arranged his hoisting truck in position, supervised and directed the matter of hooking his block and tackle to that of the defendant Ford Bros. Company, and when this had been done took a position in the cab of the

'hoisting truck' to await a signal to turn on the power and commence the hoisting operation." It is further alleged in petition that, "Thereafter, upon a signal given by one of the agents of defendant Ford Bros. Company, the said Genandt applied the power and commenced hoisting. After the press had been raised or lifted a distance of six inches to a foot, upon signal, the hoisting ceased and the Ford Bros. Company truck was removed from underneath the press. Thereafter, the hoisting was again twice or three times commenced and stopped. After a signal was given to commence hoisting the last time, the hoisting was accompanied by pronounced jerking, jolting and chattering, whereupon the equipment collapsed and gave way, the press crashed to the ground, and the plaintiff, who was in the act of pushing against the press, was caused to fall a distance of approximately 50 feet on top of the press;" that as a result of such fall he received injuries for which he is seeking to recover herein. Plaintiff further alleges that the accident was due to the defendant Andrew Murphy & Son, Inc., failing to make a proper inspection of the equipment installed at the scene of the accident before connecting Murphy's apparatus thereto; in operating the hoisting apparatus in such a manner as to cause it to jerk and chatter, thereby placing undue strain and stress upon the block and tackle, pulleys and other hoisting equipment; and in attaching and hooking up said hoisting equipment to the equipment furnished by the defendant Ford Bros. Company, in a careless negligent, unskilful, and unsafe manner.

The answer of Andrew Murphy & Son, Inc., alleges that its said hoisting truck and operator were hired by and rented to said Ford Bros. Van & Storage Company at an hourly rate; that they were placed under the charge, control and supervision of Ford Bros. Company, and became and were during the time they were being used by said Ford Bros. Company, the special employee and equipment of said Ford Bros. Company; that the answering defendant did not exercise any authority or control over said operator and truck during said time; that operator of said truck

was a fellow servant and fellow employee of the plaintiff; and was, in fact, acting under the orders, direction and supervision of said Ford Bros. Company; that plaintiff and his fellow employees prepared the cables, rope, blocks and tackle with which said printing press was to be hoisted, and assisted and directed the manner in which the said hoisting truck and operator lifted the same; that said printing press fell as a result of the hook pulling out of the block which had been hooked to the "I" beam at the top of the Baum building; that said hook and block were owned by the said Ford Bros. Company and were part of the equipment used and installed by the plaintiff and his fellow employees.

On trial before court and jury after the plaintiff had offered his evidence and rested, motion of the defendant Andrew Murphy & Son, Inc., to dismiss case or instruct jury to return a verdict for said defendant was sustained; case was dismissed, and plaintiff has appealed.

By numbers 1 and 2 of appellant's assignment of error, question as to sufficiency of evidence to require submission of the case to the jury is presented.

The crucial question in this case is: What was the contract or agreement under which the services of the hoisting truck and operator of Andrew Murphy & Son, Inc., were furnished to the Ford Bros. Company?

As to the contract, the only evidence is the testimony of the witness Ray A. Ford, who testified that he is the president and general manager of the Ford Bros. Van & Storage Company, a corporation. On January 13, 1939, he had a conversation with Gus Saunders, foreman down at Murphy & Son's shop; did not know whether he was an officer or not, called him by phone some time before noon. "Q. Just as nearly as possible, tell what he said and what you said in that conversation. A. Well, first I said to Gus, 'Can I get your wrecker to help me hoist a machine in the Baum building, and how much will you charge an hour?,' and he said, 'We will charge $5 an hour.' I said, 'Well, will it be available this afternoon some time, say about 1:30 or 2:00 o'clock?,' and he said 'Yes'. I said, 'I will call you later and

tell you exactly the time I want you to come.'" Called him that afternoon, probably around 1:00 o'clock from my office. "Q. Will you tell us what conversation you had with Mr. Saunders at that time? A. Well, I asked him if he could have the truck at the Baum building about 1:30 or 1:35, something like that, and he said he could. * * * That was about all there was to it." The truck responded to that call. Mr. Genandt came to the scene of the accident with his truck as a truck driver; I have known him for quite a while. "Q. You have known those were his duties, just as a truck driver? A. No, he run this hoist himself, and was a driver."

The foregoing embraces the entire testimony as to the agreement between the parties.

The evidence shows that, before H. E. Genandt, the driver of the hoisting truck of Andrew Murphy & Son, Inc., arrived at the Baum building with the hoisting truck, the Ford Bros. Company and its employees had installed the equipment of that company which was to be used in the hoisting of the press, ready for the equipment of Andrew Murphy & Son, Inc., to be hooked on. A part of the Ford Bros. Company's equipment consisted of a heavy block and tackle. A four-pulley block, which equipment included a goose-neck hook with the swivel, was attached to an "I" beam extending out from the top of the Baum building, and a triple pulley block was at the bottom; the end of the rope extending through the block was fastened to some stationary object; this arrangement did not function as a block and tackle, but merely hung there in suspension as a chain would. When Genandt arrived with the Murphy hoisting truck, Mr. Ford and Mr. Genandt connected up the Murphy cable to the Ford equipment. They got out two single pulleys that were in the Murphy truck; the lower pulley of the Murphy equipment was attached to a chain at the rear end of the Murphy truck, and the other pulley was hooked into the lower pulley of the Ford equipment. The Murphy steel cable was passed from the winch on the hoisting truck and threaded through the single pulley attached to the chain

near rear end of hoisting truck up to the single pulley directly beneath the Ford equipment, and from there went down and was attached to chains that were around the press. After the Murphy cable was thus attached, the Ford equipment was raised so that the lower block or pulley of the Ford equipment was about on a level with the third floor of the Baum building, and the Murphy driver, Genandt, took his place in the cab of the hoisting truck of Murphy's and operated the winch on signal from Ray A. Ford. During the process of raising the press by the use of the equipment so installed, the swivel connecting the goose-neck hook with the pulley block attached to the "I" beam, and a part of the equipment of Ford Bros. Company, broke and permitted all of the equipment and the printing press to fall to the ground, and plaintiff, who was at the time standing on a fire escape at the window of the second floor pushing out upon the press, fell from said fire escape onto the press sustaining injuries, for which he is seeking to recover in this case. Nothing broke about the Murphy truck or any of the equipment of the Murphy company that day.

Ray A. Ford, the president and general manager of the Ford Bros. Van & Storage Company, was the "boss on the job" and directed the activities of every one who was there, and gave signals to Genandt, in the cab of the Murphy company truck, for the operation of the hoisting winch. There is no evidence that Genandt, or any one connected with Andrew Murphy & Son, Inc., had or exercised any authority there, or that he supervised or in any manner directed such operations.

The plaintiff contends that, under the facts shown by the evidence, Genandt, the operator of Andrew Murphy & Son, Inc., hoisting truck, remained the employee of said company and did not become a loaned or special employee of the Ford Bros. Van & Storage Company during the time of said transaction. While on the part of the defendant Andrew Murphy & Son, Inc., it is contended that during said time said truck and operator were hired by and rented to the said Ford Bros. Company at an hourly rate; that they

were placed under the charge, control and supervision of Ford Bros. Company and became and were, during the time they were being used by the Ford Bros. Company, the special employee and equipment of the said Ford Bros. Van & Storage Company.

The allegations of the petition that the Ford Bros. Company therefore "contracted orally with the defendant Andrew Murphy & Son, Inc., to hoist the said press from the defendant Ford Bros. Company's truck to the second floor of said Baum building" were not established by the evidence. The terms of the contract, while oral, are not in dispute. Only one witness, Ray A. Ford, testified thereto. The terms of the contract as testified to by him have been heretofore set out verbatim. From his testimony the agreement would appear to have been that the Murphy company should loan or hire its "wrecker" (hoisting truck) to the Ford Bros. Company for its use to help in the hoisting of a press into the Baum building for the agreed consideration of $5 an hour; that the "wrecker" should be available that afternoon.

Not only are the facts as to the terms of the contract undisputed, but what the parties did in the carrying out of the contract is likewise not controverted. It clearly appears that Ray A. Ford, the president and general manager of the Ford Bros. Company, had the supervision and directed the activities of all persons helping; that he was the "boss on the job," and exercised the right of control there at that time. No other logical inference can be drawn from the evidence. There is nothing in the evidence from which it might be reasonably inferred that Andrew Murphy & Son, Inc., reserved or had or exercised any control of the hoisting truck or operator after it arrived at the Baum building and was hooked onto the equipment of Ford Bros. Company, other than the operation of the winch on the truck which was operated by Genandt, on signal from Ford.

Appellant cites *Curry v. Bruns*, 136 Neb. 74, 285 N. W. 88, but in our view that case does not support his contention under the undisputed facts in the instant case. In the opinion in *Curry v. Bruns, supra,* it is said:

"The right of control, or the want of it, is determinative of the relationship; for one who has no right of control over another ought not be required to answer for his acts, and, on the other hand, if one has such right of control he should be answerable."

Appellant also cites *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 S. Ct. 252, as a leading case on the proposition under discussion, and quotes in full in his brief the syllabus of that case without further comment. Had the evidence established the facts as alleged in the petition, that is, that the Ford Bros. Company contracted orally with the defendant Andrew Murphy & Son, Inc., "to hoist the said printing press from defendant Ford Bros. Company's truck to the second floor of said Baum building," the case cited would have had greater application. But, according to the evidence, the agreement, in effect, was that the Murphy company would loan or hire its "wrecker" or hoisting truck to the Ford Bros. Company to be used to help it, Ford Bros. Company, hoist a machine into the Baum building. Ford Bros. Company appears to have been an independent contractor, to have had the contract to place the press in the Baum building, and had and exercised supervision and control over all employees working on that undertaking. The Ford Bros. Company merely employed the Murphy "wrecker" to assist in doing that work at so much an hour. The Murphy company did not reserve the right to direct or in any manner supervise the work of the hoisting truck or of Genandt, and, so far as the record shows, it did not. The work was thus the work of the Ford Bros. Company, and not the work or undertaking of the Murphy company. In the case of *Standard Oil Co. v. Anderson, supra,* the court in opinion, while recognizing the rule contended for by the appellees herein, held it was not applicable under the facts in that case, and in the opinion make the following clear distinguishing statement as to such contracts and liability of parties:

"It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his

employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still in its doing his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

The soundness of the holding in that case, under the facts there involved, will not be questioned, but it is not controlling under the facts with which we are now dealing. There it appears that the defendant was doing the work of hoisting itself, and received an agreed compensation for it of $1.50 a thousand for the hoisting. The power, the winch, the drum, and the winchman were its own. It did not furnish them, but furnished the work they did to the stevedore; and the court found that the work was done by the defendant, for a price, as its own work, and by and through its own instrumentalities and servant, under its own control. Under such circumstance, the defendant was held liable for negligence of its winchman.

The cases of *Driscoll v. Towle*, 181 Mass. 416, 63 N. E. 922, and *Hartford Accident & Indemnity Co. v. Addison*,

93 Fed. (2d) 627, also cited by appellant, both recognize the rule announced by this court in *Curry v. Bruns, supra,* and are both subject to similar distinction as to the facts as the *Standard Oil Co. v. Anderson, supra.*

Appellant further cites in his brief Restatement, Law of Agency, sec. 227, wherein "Servant Lent to Another Master" is discussed, but the rules there announced are in harmony with the views heretofore expressed by this court. In the annotations under this section it is said, "This section states the Nebraska law," and the following, among other Nebraska cases, are there cited: *Hitte v. Republican V. R. Co.,* 19 Neb. 620, 28 N. W. 284; *Westover v. Hoover,* 88 Neb. 201, 129 N. W. 285; *Forsha v. Nebraska Moline Plow Co.,* 89 Neb. 770, 132 N. W. 384; the facts in which cases are analogous to instant case, and sustain the contention of the appellees herein.

The facts in the instant case materially differ in principle from the facts in the cases relied upon by the appellant. This is a case where one party, the defendant Andrew Murphy & Son, Inc., put its hoisting truck with the operator thereof at the disposal of another, Ford Bros. Van & Storage Company, to assist in a particular service under the exclusive control of the latter, during the performance of which the employee, Genandt, from the time of his arrival at the Baum building, stepped aside from the business and control of Andrew Murphy & Son, Inc., his first employer, and became, for the time being, the special servant of Ford Bros. Company, his substituted employer.

Had there been a dispute in the testimony as to the terms of the agreement or as to the pertinent facts relating to the right to the control of the "wrecker" or hoisting truck and driver after the truck arrived at the Baum building, and they had been such that more than one reasonable inference could have been drawn therefrom, then it would have been a question of fact for the jury; but, there having been no dispute as to such contract or pertinent facts, it became a question of law. The trial court was right in so holding.

The other errors assigned and discussed by appellant in his brief relate to rulings of the trial court on admission of evidence, none of which would have had a bearing upon the question of liability heretofore considered; and as the conclusion herein reached on question of the liability of appellee Andrew Murphy & Son, Inc., requires the affirmance of the judgment of the trial court, it becomes unnecessary for the court to consider such other assignments of error. The judgment of the district court is

AFFIRMED.