EDWARD KESSLER, APPELLANT, V. BATES & ROGERS CONSTRUCTION COMPANY ET AL., APPELLEES.

50 N. W. 2d 553

Filed December 21, 1951. No. 33025.

*Gross, Welch, Vinardi & Kauffman,* for appellant.

*Brown, Crossman, West, Barton & Quinlan,* and *Donald T. Fox,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant sued Bates & Rogers Construction Company, appellee, for damages on account of personal injuries claimed to have been sustained by him because of negligent acts of William J. Gallagher, an employee of appellee, while, as it is claimed, he was engaged in performing services for, at the direction of, and subject to the control of his employer.

The district court, when the evidence of the parties was concluded, granted the motion of appellee for a peremptory instruction to the jury to return a verdict for it, rendered a judgment on the verdict, and refused appellant a new trial. William A. Pope Company was the employer of appellant, but no negligence is charged or claim made against it. It is a party only because of any subrogation rights it may have because of the Nebraska Workmen's Compensation Act.

Appellant claimed he was injured because of the negligent operation of a crane by William J. Gallagher, an employee of appellee, while pipe, the property of William A. Pope Company, was being unloaded from a railroad car near the site where each of the contractors, Bates & Rogers Construction Company, appellee, and William A. Pope Company, was engaged in construction work; and that at the time of the accident the machine was owned and operated by appellee in its business and the operator thereof was directed and controlled by it. The contention of appellee in this regard was that the machine and the operator thereof were loaned or leased to the Pope Company for a consideration to assist it in unloading a car of large and heavy pipe owned by it; that at the time of the accident the machine was being operated by it in its business and the crane and Gallagher were under the exclusive control and direction of the Pope Company; that Gallagher was then a special em-

ployee of that company; that he and the appellant were at the time of the accident fellow employees of the Pope Company; and that appellee had no interest in, connection with, or control of the machine, the operator thereof, or the work being done at that time.

The Central Nebraska Public Power & Irrigation District desired to construct a large power plant for the generation of electric energy not far from the town of Bellevue, Nebraska, and near the Missouri River. It made a contract with appellee for the construction of the sub-structure and the super-structure of a multiple-story building as a part of the plant. It awarded a separate contract to William A. Pope Company to furnish and install all pipe desired and required in and incidental to the plant. The contractors and the contracts were wholly independent of each other, and neither contractor had any interest in nor responsibility for the performance of the contract of the other.

Appellee owned and had at the location of the construction heavy equipment including cranes, hoists, trucks, tractors, excavating and dirt moving machines, and like equipment necessary and usual to the work its contract required. The Pope Company had no such equipment there. It arranged to secure from appellee any machines or equipment of this character it required in the performance of the work under its contract, and appellee agreed to furnish an operator of any machine which was furnished by it to the Pope Company. Appellee was paid on an hourly basis by the Pope Company for any machine it secured and used, and in addition the wage of the operator.

The Pope Company on July 21, 1948, had a shipment of pipe on the railroad spur track near the place where the construction was being made. It was metal pipe in sections 40 feet long, 2 feet in diameter, and the weight of each was about 3,000 pounds. It was contained in a gondola car longer than the pipe. The pipe filled the car to capacity.

Jack Holt, the foreman of the Pope Company, on the morning of that day arranged with the foreman of appellee to furnish the Pope Company a crane to be used in the operation of unloading the pipe. Harry B. Stewart, superintendent of equipment for appellee, requested William J. Gallagher, a crane operator of 30 years' experience and then engaged as such by appellee, to leave the excavating job on which he was then working and to take the machine he was using to the spur track north of the plant then being constructed. He did as he was requested, and when he arrived with the machine Holt was near the car of pipe. Holt directed where and in what position in reference to the car the crane should be placed and where the pipe should be deposited as it was unloaded. His directions were followed by Gallagher; tests were made as Holt instructed to ascertain if the swing of the crane would cover the proper distance to execute the work as desired; and then, on signal from Holt, the bucket on the crane was set on the ground. Holt fastened a choker to the crane by placing it through the bucket in such manner that when strain on it was applied it would stay in the desired position and would lift and carry a section of pipe from the car to where it was desired to be placed on the ground. The choker was a steel cable of sufficient size to handle the desired load, and of sufficient length to reach from the place where it was fastened to the crane to the ends of a section of the pipe. It is also referred to in the record as a cable, a spreader, and a stringer. Each end of it was equipped with a large steel hook 12 inches long and of proper shape to be inserted in the ends of the pipe. Chokers were hard to get and each contractor had his own. They were identified by the color of paint applied to them.

The crane was rigged by Holt, and for this purpose he used a choker or spreader of his employer. The attention of Holt was directed to the bucket on the crane, and it was suggested that it be removed and the choker

fastened directly to the crane. Holt refused to do this because of the time required to detach it. When a crane is to be used to handle pipe it is rigged for the operation by the owner of the pipe.

The operation after the crane was rigged by Holt was that Gallagher raised the bucket sufficient to clear the top of the car, moved the boom over the car, and lowered the choker. The hooks attached thereto were placed in the ends of a section of the pipe; in the north end by Holt, and in the south end by appellant. The pipe was raised to clear the car, the boom moved to the south and west; and the pipe lowered and spotted in the pile on the ground. After the crane was placed in position by the car containing the pipe, Gallagher did not operate the crane in any way or for any purpose other than in compliance with the directions and signals of Holt, except in spotting the pipe on the pile on the ground, the signal was given by another employee of the Pope Company. About ten sections of the pipe were unloaded from the car in this manner without any unusual happening. Thereafter in the removal of another section of the pipe, the accident happened resulting in injuries to appellant.

Jack Holt, the foreman of the Pope Company, was the boss on the job and directed the activities of everyone who was there, made all of the decisions, and gave the directions and signals to Gallagher who remained in the cab of the crane where the controls were for the operation of it. There is no evidence that Gallagher or anyone connected with appellee had or exercised any authority there or that he supervised or in any manner directed the operation.

The application of the doctrine of respondeat superior in any case depends upon the power of control which the superior possesses and which for the protection of third persons he is required to exercise over the conduct and activities of his subordinates. It follows that the doctrine has application only in cases where the

power of control exists, and it does exist when the employer has the right and power of control of the acts and of the retention or discharge of the employee.

A servant may be loaned by his master to another so that the acts of the servant become the acts of the master to whom he has been loaned, and during the continuance of that status the first or general master is not responsible for the acts of the servant.

In this case it is true that appellee selected and constituted William J. Gallagher its employee and compensated him as such. These are circumstances, if nothing else intervened, that would be strong to show he continued and was the servant of appellee. It was reimbursed for his wages and was paid for the use of the machine while it was engaged in the work of the Pope Company. Gallagher was the servant of appellee in a great many things and generally, but as to the operation of the crane at the time of the accident, he was not its servant but was then bound to and worked under the orders of the Pope Company given by its foreman, and if it had seen Gallagher misconducting himself in working the crane or disobeying its orders, it could have discharged him from that employment.

In determining who is liable for the negligence of a servant in the general employ of one person but who at the time of the injury, because of which suit is prosecuted, was assisting another, the usual test is whose work was being performed and who had the power and right to control and direct the servant in the performance of that work. In Mansfield v. Andrew Murphy & Son, 139 Neb. 793, 298 N. W. 749, it is said: "The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may become liable for his acts. * * * The right of control, or want of it, determines if the relation of master and servant, at the particular time in question, existed between the employee and his general employer, or whether there had been a

change in relationship and he had become, for the time being, a special employee of another person." See, also, Westover v. Hoover, 88 Neb. 201, 129 N. W. 285, 19 A. L. R. 215; Forsha v. Nebraska Moline Plow Co., 89 Neb. 770, 132 N. W. 384.

Appellant relies much upon The Standard Oil Co. v. Anderson, 212 U. S. 215, 53 L. Ed. 480, 29 S. Ct. 252. That case is probably more frequently referred to than any other in the area of the law here under consideration. It is a very considerable landmark in a wilderness of judicial and text literature on the subject of whether an operator of a leased machine furnished by the lessor is, during the term thereof, in the employ of the lessor or of the lessee. If the evidence in this case had tended to support the allegation of appellant that the crane, at the time of the accident, was operated by appellee in the furtherance of its business and under and by its direction, this case would have had greater application. There is no evidence of the truth of those statements which were essential to the case of appellant. The work being done was that of the Pope Company and not an undertaking of appellee. It was being done under the control and exclusive direction of the Pope Company. In that case the court spells out the law on this subject as follows: "It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men became pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished

is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. * * * To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work." See, also, Western Marine & Salvage Co. v. Ball, 37 F. 2d 1004; Malisfski v. Indemnity Ins. Co. of North America, 135 F. 2d 910; Wylie-Stewart Machinery Co. v. Thomas, 192 Okl. 505, 137 P. 2d 556; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S. W. 2d 67, 136 A. L. R. 516; Annotation, 17 A. L. R. 2d 1442; Annotation, 55 A. L. R. 1263; Restatement, Agency, § 227, p. 500, and Comment d, p. 503.

There is no dispute as to the arrangement between appellee and the Pope Company for the use of the crane by it in unloading its car of pipe, and what the parties did in carrying out the agreement is likewise not controverted. There is no evidence that appellee reserved or had or exercised any control of the crane or the operator thereof after it arrived at the location of the car containing the pipe during the unloading of it. A verdict based on a conclusion that Gallagher at the time of the accident was an employee of and acting for appellee could not have been sustained. It was the duty of the court to instruct a verdict for appellee. Jensen v. Romigh, 134 Neb. 890, 280 N. W. 223, states the rule: "Where but one rational conclusion can be drawn from all the evidence, it is the duty of the trial court to direct a verdict or to render judgment accordingly." See, also, Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106. Mansfield v. Andrew Murphy & Son, *supra,* a case somewhat similar to this, says: "In such case, whether the right of control, or want of it, existed, is ordinarily a question of fact for the jury; but where the pertinent facts pertaining to the contract and relationship of the

persons involved are not in dispute, and but one reasonable inference can be drawn therefrom, it is a question of law for the court."

The judgment of the district court should be, and it is affirmed.

AFFIRMED.