IN RE ESTATE OF ALVIN A. BINGAMAN, DECEASED. JULIAN L. PETERSON, APPELLEE, v. ESTATE OF ALVIN A. BINGAMAN, DECEASED, APPELLANT, IMPLEADED'WITH JOHN P. MAINELLI, DOING BUSINESS AS JOHN P. MAINELLI CONSTRUCTION COMPANY, APPELLEE.

50 N. W. 2d 523

Filed December 21, 1951.   No. 32995.

*Cranny & Moore,* for appellant.

*G. H. Seig* and *David D. Weinberg,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an appeal from the verdict of a jury and a judgment of the district court in favor of Julian L. Peterson, plaintiff and appellee, for $13,875 against the Estate of Alvin A. Bingaman, deceased, defendant and appellant. The cause originated as a claim filed by this appellee against the appellant. The estate was probated in the county court of Douglas County, Nebraska. The claim was denied by the county court and this appellee took an appeal to the district court for Douglas County, Nebraska. It is from the verdict and judgment rendered on the appellate trial in the district court that the appeal herein has been taken.

John P. Mainelli, doing business as Mainelli Construction Company, was a named party to the action in both the county and district courts and is also named herein. He however has been named for the purpose of protecting his right of subrogation, if any he has, against the recovery, if there be any, in favor of Peterson and against the appellant. He is designated as an appellee but will be referred to hereinafter as Mainelli. Peterson will be referred to as plaintiff, the Estate of Bingaman will be referred to as defendant, and the deceased Alvin A. Bingaman as Bingaman.

The action as tried in the district court was for negligence on the part of Bingaman causing personal injury and damage to the plaintiff.

To the extent necessary to an understanding of the questions involved herein the petition charges in substance that on November 6, 1946, Mainelli orally contracted with Alvin A. Bingaman, who owned a certain truck on which was mounted a boom equipped with cables, to unload a carload of steel consisting of various parts of a mash tub and to convey these parts with the boom truck from a railroad siding into the Falstaff Brewery; that on November 7, 1946, Bingaman came to the premises involved and proceeded with the performance of the service contemplated; that the lid to the mash tub was hoisted by cables attached to the boom from the railroad car and the truck with Bingaman controlling and operating it moved to a point in front of the brewery; that after reaching this point Bingaman manipulated the controls in such manner as to cause the boom to come in contact with overhead high voltage electric wires which were suspended and carried on poles in front of the brewery and as a result thereof a great charge of electricity passed through the boom, the cables, and the vat lid into the person of plaintiff, severely and permanently injuring him; that plaintiff was in the employ of Mainelli and at the time was in due course of his employment aiding in the transfer of the lid from the railroad car to the brewery; that operation of the boom and cables by Bingaman was negligent; and that his negligence was the cause of plaintiff's injuries and damage. The specifications of negligence are the following:

"a. In placing and operating the said boom truck in such a position as to cause a high voltage electric current to strike the said boom and cables.

"b. In operating and manipulating the levers and controls on the said boom truck in such a manner as to cause the said boom and cables thereon to come into

contact with an overhead high voltage electric power wire.

"c. In failing to take adequate precaution to avoid coming in contact with said overhead high voltage electric wires."

The defendant denied that Bingaman was in anywise negligent. Other defenses were set forth in the answer but they do not require mention at this point.

There is no denial that the boom either came into contact with the wire or came so close to it that the current therefrom passed down the boom or cable and into the vat lid thus causing serious injury to plaintiff. Plaintiff was injured as were three other employees of Mainelli; also Bingaman was killed. On account of the death of Bingaman the action here is against his estate rather than against him personally.

One of the defenses to this action is that, assuming that Bingaman was guilty of negligence, action therefor being in tort, it did not survive and this action is not maintainable against his estate.

Under the holdings of this court the contention is without merit. The latest pronouncement on this subject is found in Rehn v. Bingaman, 151 Neb. 196, 36 N. W. 2d 856. In that case by quotation from In re Estate of Grainger, 121 Neb. 338, 237 N. W. 153, 78 A. L. R. 597, it was said:

"An action for personal injuries may be prosecuted against the estate of a decedent whose negligence is alleged to have been the proximate cause of the injury.

"The right to an action for personal injury does not abate by reason of the death of the wrongdoer before the action was brought." See, also, Wilfong v. Omaha & C. B. St. Ry. Co., 129 Neb. 600, 262 N. W. 537.

At the close of plaintiff's evidence and again at the close of all of the evidence the defendant moved in the alternative for a directed verdict in its favor or for dismissal on the ground, among others, that the evidence

did not sustain the cause of action. The motions were overruled.

After verdict and judgment the defendant filed motions for judgment notwithstanding the verdict and for new trial. These motions were overruled.

Among numerous other assignments, the orders overruling these motions were assigned by defendant as errors entitling it to a reversal of the judgment.

In this situation it becomes necessary to examine the record in order to ascertain whether or not the cause of action finds support in the evidence.

The record discloses that on November 6, 1946, Lawrence V. Glynn, foreman of ironworkers for Mainelli, went to the place of business of Bingaman and there engaged Bingaman to come to the Falstaff Brewery on November 7, 1946, and bring with him a flat truck and a boom truck. The purpose of the engagement was to unload from a railroad car and deliver to the north side of the brewery the parts of a beer vat.

Pursuant to the arrangement Bingaman appeared with the two trucks at the appointed time. There were lines of electric wire running along the north side of the brewery. One line which was about 29 feet high carried a current of 2,300 volts and another about four feet higher carried 13,200 volts. This fact was discussed as was the further fact that it was not possible to get the current cut off during the period of this operation. This discussion was among four employees of Mainelli, including Glynn, and Bingaman. Everyone participating in the movements involved was informed of the danger of contact with or of too close proximity to the electric line.

The first movement described was the getting of the trucks to the railroad car for the purpose of unloading. This involved lowering the boom on the truck so as to permit passage under the wires. This movement as well as all other movements was under the direction and supervision of Glynn. Signals for all movements were giv-

en by Glynn or other employees of Mainelli. The wall of the vat was circular. It was divided into halves. The next movement was the lifting of one of the halves out of the railroad car and placing it on the flat truck. This was done by using the boom truck. The flat truck with this half was then taken to the brewery doors where an effort was made to back in for unloading. This could not be done. Thereupon at the direction of Glynn, Bingaman brought the boom truck around and after placing it in position removed the half from the flat truck and the flat truck was driven away. It was so placed under the supervision of Glynn. As placed the boom was from 30 to 40 inches from the electric wire carrying 13,200 volts of electricity. This distance Glynn and the others involved including Bingaman regarded as a safe distance. The half was lowered and the boom truck returned to the railroad car where the load line of the boom truck was attached and the second half removed. This half was thus carried to the front of the brewery where it was lowered. The top of the boom was placed in about the same relative position with the electric line as it was when the first half was lowered.

The boom truck was then returned to the railroad car where the load line or cable was attached to the lid of the vat and the lid removed from the car. The line was attached to a cable which passed through two holes in the lid. The holes were off center so that in consequence the load did not hang evenly on the line. Some part of the heavy side of the lid was caused to rest on the rear end of the truck. This lid, according to plaintiff's estimates, weighed around 2,500 pounds. According to the estimates of defendant it weighed about 3,500 pounds. In this position with certain employees of Mainelli steadying it the lid was transported to the front of the brewery. The truck was placed in substantially the same position as on the two previous occasions with the boom of the truck substantially the same distance from the top electric wire.

After the truck was placed in position Bingaman left the cab of his truck and got down and there is evidence that he placed his hands on the instruments by which the boom and the load line are controlled. That he operated these controls there is no direct evidence. After the truck stopped the employees who had participated in the movement from the car sought to disengage the portion of the lid which rested on the truck so as to permit it to be lowered to the ground. The lid became disengaged and turned as suspended on the cable or load line 160 to 180 degrees. At some point in the operation obviously after or coincident with the disengagement of the lid from the truck, current came down through the boom or cable injuring plaintiff, one Eric H. Rehn, one Robert E. Speed, and the already mentioned Lawrence V. Glynn and killing Bingaman. The plaintiff, Rehn, Speed, and Glynn appear to have been touching the lid but all of them were not able to give evidence of that fact. The shock appears to have in a measure destroyed the ability to recall some immediately preceding incidents. The boom was in close proximity to or in contact with the top wire immediately after the accident.

The evidence of plaintiff indicates that the truck stood at about a 35 to 45 degree angle to the top electric wire; that the height of the boom above the point of attachment to the truck was about 36 feet; that the over-all height from the ground was about 40 feet; and that the boom by the use of the controls to lower it could have been brought into contact with or in close proximity to the top electric wire. The boom did not operate sidewise from its point of attachment but only up and down from the point of attachment on a plane parallel with the length of the truck.

The plaintiff has rested his case in chief insofar as negligence is concerned on proof of placement of the boom truck and an inference from the fact that having had his hands on the controls Bingaman operated the controls of the boom after the truck was placed.

The controls operate manually. The power for operation comes from the power unit of the truck. The plaintiff in his case in chief offered no evidence as to known operation or method of operation of controls beyond the fact that all operations were performed by Bingaman on signals from Glynn or other ironworkers, employees of Mainelli; except the inferred operation of lowering the boom into the electric wire or into such close proximity as to cause the claimed injuries to plaintiff and to the others and the death of Bingaman.

The first motion for directed verdict or for dismissal challenged the sufficiency of this evidence to sustain plaintiff's cause of action. That this motion should have been sustained there can be little doubt.

As pointed out there are three specifications of negligence. The first relates to the placing and operating of the truck. This was done by Bingaman in accord with and under the direction and control of Mainelli's foreman. No act of Bingaman in this connection was independent of the control and direction of the foreman. He was therefore an employee and not, as the plaintiff contends, an independent contractor. The right of control and the contract of hiring in this situation created the relationship of master and servant as between Mainelli and Bingaman.

In Mansfield v. Andrew Murphy & Son, 139 Neb. 793, 298 N. W. 749, a case involving the principle under consideration here, this court pointed out that the contract under which service was to be performed and performance thereunder were determinative of the true status of the parties. It was there pointed out also that where in the relationship there was no factual dispute the question of the legal relationship was one for the court and not the jury. There is no material factual dispute in the present instance.

In this relationship Bingaman, not being charged with the duty in the first instance with placing the truck, was not liable for injury to plaintiff, a fellow employee,

resulting from placing or parking the truck where he did under the direction of Mainelli's foreman. Pester v. Holmes, 109 Neb. 603, 191 N. W. 709; Showers v. Lund, 123 Neb. 56, 242 N. W. 258; Wilson v. Thayer County Agricultural Society, 115 Neb. 579, 213 N. W. 966, 52 A. L. R. 1393; Restatement, Agency, §§ 354, 355, pp. 776, 779.

Under these authorities it is pointed out that one in the situation of Bingaman could be held accountable for misfeasance or positive wrong. However there is nothing in the record to indicate that Bingaman was, in the placing of the truck, guilty of misfeasance or positive wrong or even of nonfeasance. There was no evidence upon which to justify a submission of this charge of negligence to a jury.

The third specification of negligence is that Bingaman failed to take adequate precaution to avoid coming in contact with the high voltage electric wire. If this specification was intended to embrace only the question of placement of the truck and boom independent of operation after placement, then it is not materially different from the specification already discussed and the disposition there is appropriate here.

If however it involves operation or claimed operation after placement, then it becomes a part of the second specification. It will be so regarded.

As already pointed out the charge in the second specification is that levers and controls were operated and manipulated in such manner as to cause the boom and cables thereon to come in contact with the electric wire.

Again as has already been pointed out there is no direct evidence of operation or manipulation of levers and controls. There is only evidence that Bingaman was in a position where he could operate and manipulate the controls. There is evidence that the edge of the lid was removed from the truck, but whether this was effected alone by the efforts of the men seeking to remove it or assisted by movement of the boom is a mat-

ter of conjecture and speculation. There is evidence that the boom was against or near the wire after plaintiff was injured but plaintiff in his case in chief offered no evidence of any kind to explain how it got there, that is whether it got there as a result of the operation or manipulation of controls or whether because of the position of the truck and boom the weight of the suspended lid pulled the boom over to the wire.

The theory arguendo of plaintiff at the close of the case in chief is that his evidence circumstantially shows that the contact was brought about by the operation of the controls by Bingaman. The theory of the defendant is that at that time by the evidence the cause of the injury to plaintiff was left in the realm of conjecture and speculation and in consequence there was no question for submission to a jury.

The rule which is applicable here is stated in Jones v. Union P. R. R. Co., 141 Neb. 112, 2 N. W. 2d 624, as follows: "Circumstantial evidence cannot be said to be sufficient to sustain a verdict or to require submission of a case to a jury depending solely thereon for support, unless the circumstances proved by the evidence are of such a nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom." See, also, Anderson v. Interstate Transit Lines, 129 Neb. 612, 262 N. W. 445; Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533.

The circumstances of plaintiff's case in chief are not of such a nature and so related to each other that the only conclusion which could be fairly and reasonably drawn therefrom was that Bingaman manipulated and operated the controls so as to cause the boom to come into contact with the electric wire. At least one other fair and reasonable conclusion could be drawn therefrom and that is that the release of the lid from the end of the truck caused it to swing in the direction of the wire thus pulling the boom into it without any act upon the controls by Bingaman. The motion for directed verdict

made at the close of plaintiff's evidence should have been sustained. It was overruled.

The defendant adduced its evidence and plaintiff his rebuttal, whereupon motion was again made for directed verdict or for dismissal, which, as already indicated, was overruled. The case was submitted to the jury and the verdict hereinbefore referred to was returned.

Pursuant to and in conformity with the provisions of section 25-1315.02, R. R. S. 1943, the defendant filed a motion for judgment notwithstanding the verdict and a motion for new trial. The motion permitted and required the trial court to re-examine the legal sufficiency of the entire evidence to sustain the verdict and judgment and if it was found that it was insufficient, to render a proper judgment notwithstanding the verdict and judgment previously rendered. On appeal this court is required to examine the evidence in the same way and for the same purpose. It follows then that we are required to examine the entire record to ascertain whether or not there is evidence legally sufficient to sustain the verdict and judgment.

On behalf of defendant, Ruth Bingaman was called as a witness. She gave testimony regarding the arrangement under which Alvin A. Bingaman went to the brewery. This testimony indicates that he was engaged under a contract of hiring and not as an independent contractor. The only material departure from the plaintiff's evidence in this respect is in the rate of pay.

The next witness called was Howard F. Thomas. He is an engineer. His testimony contained a description of physical conditions surrounding the brewery and the scene of the accident.

The next witness was Lee Bingaman. He described the boom truck and its mode of operation and also the mode of operation of the boom and the load line. He testified that the boom operates manually; that it can be started only manually; that it does not stop automatically; that if the clutch is engaged either for upward or down-

ward movement it can be stopped only by pulling out the clutch; that if the clutch was engaged for downward movement the movement would continue until the boom rested flat on the truck unless the clutch was pulled out; that the control of an upward movement was the same as for a downward movement; and that a similar clutch controls the load line or cable running over the boom. Gears control the upward and downward movements. After the gear is set and the clutch engaged movement may be stopped by pulling out the clutch. To prevent movement while the gear is engaged the clutch must be held out. If the clutch is released it will re-engage and movement will resume.

The position of the defendant is that it is reasonably inferable that Bingaman did not before nor at the time of the accident operate these controls and thereby cause the boom to come into contact with or in close proximity to the electric wire since if he had, movement would not have stopped at the wire but would have continued beyond until someone had manually pulled and held out the clutch.

The next and last witness called by the defendant was Ralf Toensfeldt. He is a consulting engineer in mechanical and electrical work. He examined the truck, the premises at the brewery, the location of the wire, and a photograph of the truck, the wire, and the lid taken very shortly after the accident. According to his testimony the lid was 14 feet 8 inches in diameter and weighed about 3,500 pounds. The boom is secured directly to the bed of the truck about 8 feet from the back end. The boom is 36 feet 3½ inches in length. It moves in a plane at right angles to the truck body. The height of the truck bed is about 4 feet. The top electric wire was about 33 feet 6 inches above ground. The holes in the lid through which the cable to which the load line was attached were 8 feet from one side and 6 feet 6 inches from the other. Before removal about 1,200 pounds of the lid weight was on the truck. The

lid on removal rotated about 180 degrees. On removal and rotation it shifted south or toward the building about 3 feet. The electric wire ran parallel to the building and was between the building and the truck. On account of a depression in which the right rear wheel was standing at the time there was a swing of the boom in the direction of the wire of about 3 degrees. On the basis of this examination and taking into consideration the probable position of the truck and boom, the construction of the truck, the removal of the edge of the lid from the truck, and the probable effect of the removal and the position after removal, and through mathematical calculations, this witness came to the conclusion and gave it as his opinion that it was the removal of the lid and its rotation and swinging on the load line toward the building that caused the boom to come into contact with or in such close proximity to the wire as to cause the current to travel down and injure the plaintiff.

If this was the cause then the causal operation was one in which Bingaman had no part and over which he had no control.

In rebuttal William Freiden, an engineer, was called. This witness examined the truck and the photograph which was submitted to the witness Toensfeldt. He was informed of the weight of the lid and that four men, employees of Mainelli, were steadying and seeking to remove the edge of the lid from the truck.

He gave it as his opinion that the removal of the lid and its swinging and rotation would cause the top of the boom to be affected "maybe 1 or 2 inches"; that this movement would not cause the top of the boom to come into contact with the wire; that the boom was mechanically lowered if the truck was blocked or in a stationary position, or in his own words: "That's the only two reasons, sir, that make that boom touch that line as far as I could see, is by controlling the boom or by the truck moving."

This witness was allowed substantially to assume that

Bingaman had engaged the clutch for downward movement and that he caused downward movement until the boom made contact with the wire. Based on this assumption he said, to use one of his statements: "* * * he could have held onto it long enough to pull the gear lever out of position because they aren't difficult to push in and out; they work very easily."

This testimony was elicited for the purpose of creating an inference in rebuttal of the inference from the defendant's evidence that there could have been no manipulation of controls by Bingaman since if there had been the boom would not have stopped at the wire but that it would have descended until it was down flat on the bed of the truck.

This résumé, it is believed, fairly presents the evidentiary features upon which a determination of whether or not the defendant is entitled to a judgment notwithstanding the verdict must rest. Some points of consideration become clear in this connection beyond peradventure.

Bingaman was engaged to perform a service for Mainelli under a contract of hiring, and the service performed and to be performed, with one exception, if indeed there was an exception, was under the direction of the foreman and other employees of Mainelli. The exception will be noted later.

The evidence wholly fails to sustain any contention of negligent placement of the boom in the first instance with reference to the wire. The evidence of the plaintiff indicates that the truck was parked with the boom a safe distance from the wire.

The exception to performance of service by Bingaman under the direction of the employees of Mainelli is an inference that without direction he lowered the boom on his own initiative while the men were seeking to remove the edge of the lid from the truck.

The question of whether or not Bingaman did in fact lower the boom is dependent wholly and solely on cir-

cumstantial evidence. The evidence is sufficient to reasonably sustain an inference that if he in fact did lower the boom that he did so without direction and of his own volition.

Unless the circumstantial evidence adduced was sufficient to sustain the contention that Bingaman was guilty of a departure in this regard then there was no issue for submission to a jury.

In an approach to a consideration of this matter two rules of law are pertinent. One is the circumstantial evidence rule already set forth. The other is: "Negligence is never presumed, and cannot be inferred from the mere fact that an accident happened." Bixby v. Ayers, *supra*. See, also, Engel v. Chicago, B. & Q. R. R. Co., 111 Neb. 21, 195 N. W. 523; Thompson v. Young Men's Christian Assn., 122 Neb. 843, 241 N. W. 565; Anderson v. Interstate Transit Lines, *supra;* Bergendahl v. Rabeler, 133 Neb. 699, 276 N. W. 673; Meyers v. Neeld, 137 Neb. 428, 289 N. W. 797.

From an examination of the record in the light of these rules it is to be observed that the plaintiff rested the case in chief solely on proof that there was an accident which has been described, and that after the accident and after four men were injured and one killed the boom was shown to be either in contact or in close proximity to the electric wire. No witness, expert or nonexpert, was called to give testimony as to how the contact or proximity was accomplished.

As pointed out, the plaintiff called a witness in rebuttal. The purpose was to rebut testimony of a defense witness who gave it as his opinion that the contact or proximity to the wire was caused by the release, rotation, and swinging of the lid. In this rebuttal testimony, basing it on an examination of the truck, its construction, and various mechanisms, a photograph showing the truck and its location with reference to the wire after the accident, and being informed of the weight of the lid and its location before and after the accident,

the witness gave it as his opinion that the contact or proximity was caused by operation of the controls by Bingaman. This opinion was not unequivocal however. He qualified it by the statement that this could have happened in two ways, one by controlling the boom and the other by the truck moving.

May it be said that the circumstances outlined were of such a nature and so related that the only reasonable conclusion to be drawn from them is that Bingaman operated and manipulated the controls on this truck so as to cause the boom to come into contact or close proximity to the wire? We think it may not. We think that other reasonable conclusions are not excluded by the evidence.

The rebuttal witness admits of one other conclusion. He stated that movement of the truck could have caused it. There is no evidence that the truck did move, and on the other hand there is none which excludes the possibility that it did.

The weight of the conclusion of this witness that Bingaman operated the controls also must be considered in the light of his speculative ability to explain the stoppage of the boom on contact with the wire. As we interpret his testimony in this respect he concludes that there was either a voluntary withdrawal of the clutch and gear before contact or an involuntary reaction which withdrew them after contact. He does not disagree with the proposition that in the absence of withdrawal the boom would have continued on down to the bed of the truck.

As previously pointed out Ralf Toensfeldt was called by the defendant and gave his opinion as to what was the cause of the contact. Of course this may not be weighed against the evidence of plaintiff for the purpose of determining whether or not the evidence of plaintiff was sufficient as proof of a cause of action.

When however the reliance is wholly upon circumstantial evidence to sustain a cause of action it appears

proper to consider other hypotheses which it is contended test the sufficiency of evidence under the circumstantial evidence rule. The testimony of this witness presents such a hypothesis and test.

We are unable to say that the conclusions and opinions contained in the evidence of this witness are subject to rejection as unfair and unreasonable.

This being true it becomes necessary to say that under the circumstantial evidence rule the evidence of plaintiff is insufficient to sustain a cause of action.

The judgment is reversed and the cause remanded with directions to enter judgment notwithstanding the verdict in favor of defendant and against the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.