ROY BARTON, APPELLEE, V. ERNEST HOBBS ET AL., APPELLANTS, IMPLEADED WITH EARTHWORMS, INC., A CORPORATION, APPELLEE.

151 N. W. 2d 331

Filed May 26, 1967. No. 36474.

Crossman, Barton & Norris, for appellants.

Mathews, Kelley & Cannon, for appellee Barton.

Cassem, Tierney, Adams & Henatsch, for appellee Earthworms, Inc.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

CARTER, J.

Plaintiff brought this action against Ernest Hobbs and Charles R. Hobbs, a partnership doing business as E. E. Hobbs & Son, for damages resulting from injuries sustained in a cave-in of a sewer ditch. At the close of the evidence, the trial court directed a verdict for the defendants. After argument on the motion for a new trial, the trial court sustained the motion and granted a new trial. The defendants Hobbs have appealed. Earthworms, Inc., was made a party defendant for subrogation purposes as the employer of the plaintiff to whom it has paid compensation under the workmen's compensation law. The issue presented by the present appeal is the correctness of the trial court's ruling in granting the plaintiff a new trial.

The evidence shows that Earthworms, Inc., was engaged in the construction of a sewer line in La Vista in Sarpy County immediately south of the city of Omaha. This entailed the digging of a ditch, the laying of sewer pipe, and the covering of the pipe and back-filling of the ditch. Earthworms, Inc., engaged the defendants Hobbs to furnish a manned dragline to dig the ditch through an area requiring the use of heavy equipment. The dragline, with operator and oiler, was provided by Hobbs at the agreed price of $16 per hour. Ernest Hobbs,

one of the defendants, was the operator of the dragline and will be referred to hereafter as Hobbs.

At the time and place of the accident, the ditch was about 32 inches wide at the bottom, approximately 22 feet wide at the top, and 20 feet deep, according to the plaintiff's testimony. The evidence establishes that minimum safety requirements require the sides of the ditch be veed out on a plane of $1\frac{1}{2}$ feet to 1 foot. If this formula was followed, the width of the ditch at the top would have been a little more than 30 feet. Hobbs testified that the ditch was 17 feet deep and 20 to 25 feet wide at the top. If the $1\frac{1}{2}$ to 1 formula was applied to this testimony, the width of the ditch at the top would have been approximately 25 feet. It is the contention of the plaintiff that the $1\frac{1}{2}$ to 1 plane was not maintained on the sides of the ditch and that the sides bulged in a convex position which negligently caused the cave-in.

At the time of the accident, the dragline was idle with the bucket on the bank. No movement of the dragline precipitated the cave-in. Plaintiff was in the bottom of the ditch preparing to lay a section of sewer tile. The cave-in occurred, striking the plaintiff and causing him serious injury. It is contended that Hobbs was negligent in the manner of digging the ditch in that the convex contour of the bank was not in accord with recognized safety regulations.

Defendants Hobbs contend that the work was that of Earthworms, Inc., and that they were an employee or special employee of that company. In this point, the evidence is that defendants Hobbs were hired by the hour to dig a sewer ditch, that they had no knowledge of the work to be done until the dragline arrived on the job, and that they proceeded to do the work under the direction and supervision of Paul Abel, Earthworm's foreman. It is further shown that engineers had set stakes which contained information as to the depth and grade of the ditch, the width of the top of the ditch, and by their location indicated the direction to be followed

in its digging. Hobbs testified that Paul Abel instructed him what he was to do each morning and the times he was there during the day. Ernest Hobbs testified that he had no authority to move the engineers' stakes and that he followed the stakes set by the engineers and the instructions of the foreman. He said that the stakes had been moved out at the foreman's direction and that he had widened the ditch previously in accordance therewith. He testified further that the foreman had directed the widening of the ditch on the morning of October 14, 1964, the day of the accident, and he had complied therewith. Plaintiff testified that he informed Hobbs that the ditch ought to be widened on at least two occasions and that Hobbs told him that he had been digging ditches for 40 years and that he knew what he was doing. These conversations were denied by Hobbs. Plaintiff testified that he was fearful of the danger until his fears were allayed by Hobbs' assurances.

The manner of doing the work was testified to by Hobbs. He testified substantially as follows: When he arrived on the job, the existing ditch which had been dug was 24 inches wide and 10 or 11 feet deep. Stakes were set in the ground from which the grade of the ditch and the depth of the ditch could be obtained. The stakes did not necessarily have anything to do with the width of the ditch. On arrival on the job, he reported to Paul Abel, Earthworm's foreman, who instructed him where to place the machine. Abel then told him to dig the trench from the stakes and vee it out. The stakes were set 10 feet from the ditch. He would dig out to the stakes and then the same distance on the other side and vee it down. He was instructed by Abel three or four times to widen the ditch which he did each time. Nothing was said to Hobbs by Abel about the construction of the ditch other than he was to go to the required depth and vee it out. It is quite evident that Abel assumed that Hobbs knew how to vee out the ditch because of his experience.

The issue here is well presented in The Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, wherein it is said: "It sometimes happens that one wishes a certain work to be done for his benefit and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work and places them under his exclusive control in the performance of it, those men became pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are for the time his workmen. * * * To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

In Kessler v. Bates & Rogers Constr. Co., 155 Neb. 40, 50 N. W. 2d 553, we announced the following rule: "The right of control, or want of it, determines if the relation of master and servant, at the particular time in question, existed between the employee and his general employer, or whether there had been a change in relationship and he had become, for the time being, a special employee of another person."

In the last-cited case, the evidence revealed the following factual situation: The Pope company and Bates & Rogers each had a construction contract with the Central Nebraska Public Power & Irrigation District for the construction of a power plant, the contractors and contracts being wholly independent of each other. The Pope company had a car of heavy pipe on track without

the means of unloading it. Bates & Rogers had a crane suitable for the job. Pope engaged the manned crane of the latter to do the unloading. The foreman of the Pope company, Holt, directed the placing of the crane and the unloading of the pipe, even to the extent of signaling the crane's movements. The crane was not operated in any manner other than at Holt's direction. We held under those circumstances that the crane and its operator were under the control of the Pope company and in its service, at the time of the accident, in the status of an employee. See, also, Mansfield v. Andrew Murphy & Son, 139 Neb. 793, 298 N. W. 749.

No such control was exercised in the instant case and the cited cases do not control the result here. Hobbs was instructed to dig the ditch and vee it out. His experience as a ditch digger was relied on for the proper digging of the ditch for the purpose of laying the sewer tile. He admits that he was familiar with the minimum safety requirements in such work. He was not restricted from a proper performance of the work by the instructions of the foreman or the stakes set by the engineers, according to his own testimony. Whether or not he was under such control by Earthworms, Inc., and its foreman as to give him the status of an employee is a question of fact for the jury under the evidence in this case.

Plaintiff's testimony that the ditch was negligently dug is corroborated to some extent by two fellow employees. Hobbs explained the method of digging the ditch and, in effect, denied that the ditch was improperly excavated. The issue of negligence is for the jury if the jury finds that Hobbs was not in the status of an employee of Earthworms, Inc.

The contract under which service is performed and the performance thereunder determine the relationship between the contracting parties. In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523. The fact that an employee is the general servant of one employer does not, as a matter of law, prevent him from becoming the par-

ticular servant of another, who may become liable for his acts. Mansfield v. Andrew Murphy & Son, *supra*. The right of control, or want of it, determines if the relation of master and servant, at the particular time in question, existed between the employee and his general employer, or whether there has been a change in relationship and he has become, for the time being, the employee of another person. Kessler v. Bates & Rogers Constr. Co., *supra*. In such case, whether the right of control, or want of it, existed, is ordinarily a question of fact for the jury; but where the pertinent facts pertaining to the contract and relationship of the persons involved are not in dispute, and but one reasonable inference can be drawn therefrom, it is a question of law for the court. Mansfield v. Andrew Murphy & Son, *supra*.

Defendants Hobbs contend that plaintiff was guilty of contributory negligence sufficient to defeat a recovery as a matter of law. It is also contended that the plaintiff had knowledge of the danger and assumed the risk when he entered the ditch to lay the sewer tile. As we have heretofore stated, plaintiff testified that he thought the ditch was unsafe until Hobbs assured him that it was free from danger. Hobbs testified that neither the plaintiff nor his two fellow employees said anything to him about the convex plane of the ditch bank or any danger arising therefrom. The evidence is in conflict and is a question for the jury.

An employee who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is chargeable with negligence or contributory negligence. An employee assumes risks not ordinarily incident to his employment, provided he knows them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger. Where there is a disputed question of fact as to whether or not an employee was informed or had knowledge of latent dangers of his em-

ployment, questions of contributory negligence and assumption of risk are for the determination of a jury. Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59; Gamble v. Gamble, 171 Neb. 826, 108 N. W. 2d 92; Fritchley v. Love-Courson Drilling Co., Inc., 177 Neb. 455, 129 N. W. 2d 515.

We think the trial court erred in directing a verdict at the close of the evidence and that it was correct in granting a new trial.

AFFIRMED.